Maybell E. BANKS, as Administratix of
the Estate of her son Kenneth Banks,
and on her own behalf, Plaintiff,

v.

P.O. Craig YOKEMICK, Defendant.

No. 99 Civ. 10815(VM).

United States District Court,
S.D. New York.

June 13, 2001.

Jonathan S. Abady, Emery, Cuti, Brinckerhoff & Abady, P.C., New York City, for Plaintiff.

Beth Hoffman, Michael D. Hess, Corporation Counsel of the City of NY, Walter A. Kretz, Jr., Seiff & Kretz, James J.

Skelton, Worth Longworth Bamundo & London, Alexander Peltz, Peltz, Walker & Dubinsky, Richard E. Signorelli, Law Off. Richard E. Signorelli, New York City, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Maybell Banks ("Banks") commenced this action on her own behalf and as administratrix of the estate of her son, Kenneth Banks. The suit was brought under § 1983 of the Civil Rights Act, 42 U.S.C. § 1983, alleging violations of constitutional rights arising from the conduct of defendant Craig Yokemick ("Yokemick"), an officer of the New York City Police Department ("NYPD"). Banks's claims include unlawful arrest and the use of excessive force, as well as wrongful death and several other related causes of action under state law.

## FACTS

Banks alleges that Kenneth Banks was riding a bicycle on 125th Street and Madison Avenue on October 29, 1998 when Yokemick, who was chasing Kenneth Banks, threw his police radio at him, striking the back of Kenneth Banks's head, knocking him off the bicycle and causing him to fall to the ground. Banks further claims that Yokemick and other NYPD officers conspired to cover up the attack and jailed Kenneth Banks in the precinct instead of bringing him to a nearby hospital; that the officers refused to obtain timely and adequate medical treatment for Kenneth Banks; and that Kenneth Banks's life could not be saved by the time he was taken to the hospital later on October 29, 1998. Kenneth Banks went into a

coma shortly after his arrival at the hospital and died on October 31, 1998.

Yokemick claims that he acted reasonably, in good faith and with justification in the proper and lawful exercise of his duties as a police officer. He further alleges that Kenneth Banks's injury could only have been caused when Banks's head struck the pavement as Yokemick tackled him while making a lawful arrest.

## DISCUSSION

Now before the Court are various motions and requests that the parties have made on the eve of trial.[1] Yokemick renews his request, previously denied by the Court, that the trial of this matter scheduled to start in a matter of days be stayed pending the outcome of a grand jury investigation by the United States Attorney into Kenneth Banks's death. Yokemick also moves for a determination that he is entitled, as a matter of law, to representation and indemnification by the City of New York. Banks requests leave to introduce at trial, with a negative inference against Yokemick, the deposition testimony of two police officers who invoked their privilege against self-incrimination in depositions taken in connection with this action. The Court will address these motions in turn.

## I. STAY OF TRIAL

Yokemick has repeatedly requested a stay of the trial, now scheduled to begin imminently. The Court reaffirms its previous denials of this motion. This ruling is not made lightly. The Court recognizes the difficult position in which Yokemick finds himself.

First, Yokemick invoked his constitutional privilege against self-incrimination

---

**1.** This Decision embodies and elaborates on rulings in this matter that this Court issued on the record from the bench on May 11, 2001.

in this proceeding. Second, the United States Attorney's investigation of the circumstances surrounding the death of Kenneth Banks and Yokemick's role in it remains open. Third, Yokemick, having made a blanket invocation of his Fifth Amendment rights, faces a trial in which this Court has precluded his presentation of evidence and testimony of other witnesses regarding any matters Yokemick refused to address at his deposition.

Nonetheless, the Court's ruling is not made in a vacuum. Resolution of this matter cannot be viewed solely from Yokemick's perspective, unenviable as his predicament may be. As soon as it learned of the federal investigation relevant to the events at issue here and at the request of the parties, the Court contacted the United States Attorney in order to obtain any information that might shed light on the estimated duration of the Government's investigation and the appropriateness of proceeding with the instant case. The Court has made inquiries more than once during the past year, including very recently. Unfortunately, it has received no information that could help determine whether granting a stay of the instant action at this time would serve the interests of justice. The Court also postponed scheduling a trial of this matter for at least six months pending an outcome of those proceedings.

Absent any word indicating when the Government's investigation may conclude, the Court is left to weigh competing assertions of rights and potential prejudice in proceeding to trial. On one side is a plaintiff insisting on resolving the merits of claims that were commenced more than two years ago, based on events that occurred in 1998. On the other side is a defendant facing exposure to potential criminal charges and seeking to put off the trial for the reasons already described.

■ As Judge Lynch recently noted in *Sterling Nat'l Bank v. A–1 Hotels Int'l, Inc.*, No. 00 Civ.7352, 2001 WL 474240, at *2 (S.D.N.Y. May 4, 2001), the quandary the Court describes is not uncommon. Rather, it recurs with sufficient regularity that a consensus has emerged regarding the standards to be applied to guide an equitable adjustment of the various interests at stake. While the Court has the power and discretion to stay a civil action pending the outcome of related criminal proceedings, such relief is not constitutionally mandated. *See Securities & Exch. Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C.Cir.1980). This principle is well-established. The Second Circuit has declared that "nothing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter." *Nosik v. Singe*, 40 F.3d 592, 596 (2d Cir.1994). *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir.1995).

In exercising its discretion to stay a civil proceeding under these circumstances, the Court must decide whether the interests of justice compel such action. That decision demands a particularized inquiry into the circumstances of, and the competing interests in, the case. *See Keating*, 45 F.3d at 325; *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir.1989); *Morris v. American Fed'n of State, County and Mun. Employees*, No. 99 Civ.5125, 2001 WL 123886, at *2 (S.D.N.Y. Feb. 21, 2001).

■ A number of factors relevant to this analysis have been enunciated by the courts, including: (1) the interests of the plaintiff in an expeditious resolution and the prejudice to the plaintiff in not proceeding; (2) the interests of and burdens on the defendant, in particular the extent to which the defendant's Fifth Amendment rights are implicated; (3) the convenience

to the Court in the management of its docket and in the efficient use of judicial resources; (4) the interests of other persons not parties to the civil action; and (5) the interests of the public in the pending civil and criminal actions. *See Keating,* 45 F.3d at 324. Balancing these principles, the Court again reaffirms its prior rulings to deny a stay of this case.

■ Banks, the mother of the victim and suing on her own behalf as administratrix of her son's estate, is now 69 years old. The passage of time works considerably to Banks's detriment. Delay obviously tends to decrease the availability of witnesses. The longer the case is postponed, the more Banks risks failing to see an adjudication of her rights and those of her son's estate.

A speedier resolution would also benefit many other people involved in the events relevant to the case. These include relatives of the victim, the numerous other originally named defendants who have settled but are scheduled to appear here, and other witnesses to the event in question who are also waiting to testify. All of these persons share an abiding interest in not dangling in a state of uncertainty any longer, subject to the anxieties associated with waiting indefinitely for something that may not happen. The matter before the Court should not continue hanging over them indefinitely. Instead, they should be allowed to move on with their lives and put these events behind them, insofar as each is so able.

Weighing the defendant's interests, the Court notes that Yokemick has not been indicted. Other courts, while recognizing that this consideration is not dispositive, have indicated that an announced indictment would weigh heavily in the defendant's favor in the calculus of whether to stay a related civil case. *See A–1 Hotels,* 2001 WL 474240, at *3 (citing cases). Yokemick has invoked the Fifth Amend-

ment in this action and as a consequence has been precluded from pursuing any matters he refused to address at his deposition. Yet that limitation, though significant, does not bar Yokemick from presenting a vigorous defense through cross-examination and other means available to him to challenge the substance of Banks's case.

In this regard, however, as this Court observed in granting Banks's motion to preclude certain defenses, Yokemick, whether for his own tactical reasons or otherwise, has chosen to remain on the sidelines during substantial periods of this litigation, as though here as a bystander, rather than as the defendant. He elected, for example, not to retain any experts to rebut the reports and testimony of Banks's three expert witnesses—a defense measure that would not have been excluded by the Court's preclusion order.

The public also has a significant interest in the swift resolution of this case. Given the unique circumstances at issue, this litigation has stirred more than ordinary public interest. The death of an allegedly unarmed black man, through the use of excessive force by a white police officer at 125th Street in Harlem, lends particular urgency to a swifter determination of the facts and disposition of any claims these facts support. Finally, the Court, after the lengthy delays already mentioned, scheduled this matter for trial months ago, and has an interest in not disrupting other matters on its docket and in proceeding to a disposition on the merits of a case that is ready for a jury.

## II. *REPRESENTATION AND INDEMNIFICATION*

Yokemick asserted cross-claims for representation and indemnification by the City pursuant to § 50–k of the New York

General Municipal Law ("GML"), and filed for a determination by this Court that he is entitled to such relief as a matter of law. His motion argues that an internal disciplinary proceeding conducted by the NYPD resulted in a final decision by the Police Commissioner to dismiss charges the Department had brought against him arising out of his role in the events at issue here. Yokemick regards this decision as an "exoneration" that, in his reading of G.M.L. § 50–k(5), entitles him to the representation and indemnification rights he asserts.

The City, as third-party defendant, has interposed a Trial Memorandum in which it contends that (1) the issue of representation and indemnification are matters of law to be decided by the Court; (2) the City's indemnification determination must be made in the first instance by the Corporation Counsel before a challenge to that decision is ripe for judicial review; (3) as a matter of policy, such a decision is not made until after the conclusion of the trial; and (4) the relevant standard of review applied to assess the sufficiency of a particular determination is solely whether it is arbitrary and capricious, in that no factual basis exists for the determination. *See* City of New York's Trial Memorandum of Law, dated May 8, 2001, at 6 (citing *Jocks v. Tavernier*, 97 F.Supp.2d 303, 313 (E.D.N.Y.2000); *Williams v. City of New York*, 64 N.Y.2d 800, 486 N.Y.S.2d 918, 476 N.E.2d 317 (1985)).

In an earlier in-limine motion to dismiss Yokemick's cross-claims, the City argued not only that Yokemick's request was premature, but that this Court lacked jurisdiction to hear it because the exclusive means New York law accorded a City employee to challenge an alleged wrongful denial of representation or indemnification by the Corporation Counsel was a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"). *See* N.Y. CPLR Art. 78 (McKinney 2001). This Court ruled that the City had not cited sufficient authority to support its jurisdictional objection.

The Court concluded that the weight of opinion among courts in this District which have considered the issue is that nothing in G.M.L. § 50–k or case law compels a ruling that Article 78 provides the exclusive method for City employees to establish a claim for representation or indemnification or to contest the Corporation Counsel's rejection of a demand for such relief. *See Nevares v. Morrissey*, No. 95 Civ. 1135, 1998 WL 265119, at *3 (S.D.N.Y. May 22, 1998); *Harris v. Rivera*, 921 F.Supp. 1058, 1061 (S.D.N.Y.1995); *Kelly v. City of New York*, 692 F.Supp. 303, 306 (S.D.N.Y.1988); *see also Jocks*, 97 F.Supp.2d at 312; *Mercurio v. City of New York*, 592 F.Supp. 1243, 1245 (E.D.N.Y.1984), *aff'd*, 758 F.2d 862 (2d Cir. 1985). The Court reserved judgment on the merits of this dispute, to which it now turns.

Resolution of the issue at hand requires interpretation of three provisions of G.M.L. § 50–k that are closely interlaced. Section 50–k(2) provides, in pertinent part, that upon request by the employee and subject to the conditions set forth in G.M.L. § 50–k(4) requiring the employee's full cooperation in the defense of the proceeding,

> The city shall provide for the defense of an employee of any agency in any civil action or proceeding in any state or federal court … arising out of any alleged act or omission which the corporation counsel finds occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his

agency at the time the alleged act or omission occurred.

G.M.L. § 50–k(2). Section 50–k(3) states:

The city shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court, or in the amount of any settlement of a claim approved by the corporation counsel and the comptroller, provided that the act or omission from which such judgment or settlement arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged damages were sustained; the duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee.

G.M.L. § 50–k(3). Finally, § 50–k(5) provides:

In the event that the act or omission upon which the court proceeding against the employee is based was or is also the basis of a disciplinary proceeding by the employee's agency against the employee, representation by the corporation counsel and indemnification by the city may be withheld (a) until such disciplinary proceeding has been resolved and (b) unless the resolution of the disciplinary proceeding exonerated the employee as to such act or omission.

## A. *REPRESENTATION*

As a threshold matter, in reading these provisions together, some general observations emerge that bear highlighting. Regarding the City's obligation to provide representation, § 50–k(2) expressly makes the employee's right contingent upon the requisite finding that the acts or omissions

for which the employee is being sued occurred during the scope of employment, in the discharge of duties, and not in violation of any agency rule. In this regard, New York law, as interpreted by the State's highest court, is unambiguous.

The New York Court of Appeals has ruled that the issue of whether a particular employee's acts were committed within the scope of his employment, thus entitling him to representation by the Corporation Counsel, "is to be determined in the first instance by the Corporation Counsel ... and his determination may be set aside only if it lacks a factual basis, and in that sense, is arbitrary and capricious." *Williams*, 486 N.Y.S.2d 918, 476 N.E.2d at 318 (internal citation omitted); *see Harris*, 921 F.Supp. at 1060–61; *Kelly*, 692 F.Supp. at 307. The exercise of this discretion must be read in conjunction with the proviso of § 50–k(5). That section authorizes the City to withhold representation and indemnification if a disciplinary proceeding against an employee—based on the act or omission that is the subject of a court case—is still pending. *See* G.M.L. § 50–k(5).

Here, the Court is not persuaded that the Corporation Counsel's decision to deny Yokemick representation lacked a factual basis and was thus arbitrary or capricious. Yokemick argues that the NYPD disciplinary proceeding instituted against him did not charge him with excessive use of force and was limited to whether he violated any police rules relating to the proper use of his radio. The statute vests discretion as to the initial determination of whether the employee acted within the scope of his authority solely in the Corporation Counsel. *See Williams*, 486 N.Y.S.2d 918, 476 N.E.2d at 318. Nothing in the statute could be construed to suggest that the exercise of the Corporation Counsel's authority may be circumscribed

in any way by the scope of the charges the relevant agency decides to level against an employee arising out of the acts or omissions that are the subject of the underlying court action. *See Bolusi v. City of New York,* 249 A.D.2d 134, 671 N.Y.S.2d 478 (1998).

In fact, Banks's claims and the evidence in the record at this point indicate that the wrongful conduct here at issue went well beyond Yokemick's act of allegedly using excessive force in throwing his radio. Rather, the issues for trial arising out of Yokemick's alleged conduct include: assault and battery; unlawful arrest; false imprisonment; excessive use of force; failure to procure emergency medical assistance; misrepresenting Kenneth Banks's head injuries; and covering up the actual cause of the wounds. Whatever consideration the NYPD may have given to any evidence of these other claims in deciding what disciplinary charges to press against Yokemick, it is the Corporation Counsel who has the duty under G.M.L. § 50–k(2) to determine whether the whole range of acts or omissions that are the subject of the court proceeding—not just those involved in the agency's disciplinary charges—fall within the employee's scope of authority and do not violate internal rules. *See id.* Examining the matters of record here, both those undisputed and those in contention, the Court finds that a sufficient factual basis exists for the Corporation Counsel's denial of representation.

Two other considerations support this conclusion. At the time the Corporation Counsel denied representation to Yokemick, the NYPD's internal proceeding against Yokemick arising out of the acts or omissions at issue here was still pending. Section 50–k(5) explicitly authorizes the City to withhold representation in that event. *See Nevares,* 1998 WL 265119, at

*3. Thus, the Corporation Counsel's decision could not be regarded as arbitrary under such circumstances.

Moreover, at that time, the City had also undertaken the representation of other defendants named along with Yokemick, including the City itself and numerous other police officers and employees alleged to have contributed to Kenneth Banks's death. Unlike Yokemick, several of the other officer-defendants played incidental roles in the underlying events. In order to avoid liability and obtain representation from the City, these officers agreed, in accordance with G.M.L. § 50–k(4), to cooperate with the City's defense, a circumstance that could require testimony at trial adverse to Yokemick's interests.

Thus, on the facts that have emerged thus far, in defending itself as well as the other individuals originally named as defendants, potential conflicts existed between the interests of the City and the other defendants on one hand, and those of Yokemick on the other. *See Mercurio,* 758 F.2d 862, 864 (2d Cir.1985) ("[I]f such a conflict exists, as where the City maintains misconduct has occurred and the employee claims no misconduct was involved, the Corporation Counsel, whose primary function is to represent the City, cannot represent the individuals."); *see also Behar v. City of New York,* No. 98 Civ. 2635, 1999 WL 212685, at *6 (S.D.N.Y. Apr. 13, 1999); *Nevares,* 1998 WL 265119, at *4, 5.

Nonetheless, Yokemick insists that he is entitled to representation as a matter of law because the agency disciplinary proceeding against him resulted in a decision to dismiss the single charge leveled against him: improper use of his radio. In support of this argument, he invokes the provision of G.M.L. § 50–k(5) that authorizes the City to withhold representation "unless the resolution of the disciplinary

proceeding exonerated the employee as to such act or omission." G.M.L. § 50–k(5).

Yokemick reads too much into the administrative determination. The decision of the NYPD's Deputy Commissioner–Trials, which the Commissioner approved, finds that Yokemick "made a tactical error and is factually guilty"; that throwing a radio at a person from the distance indicated here "constitutes physical force, period"; that Yokemick intended to use such physical force; that Yokemick's "unconventional" use of equipment was wrongful conduct because it deprived the officer of the ability to transmit a call for help and created a risk that police communications gear would fall into the wrong hands; that "as a matter of common sense, police officers should not make a habit of lobbing radios, which cost over $1,000 each, on crowded sidewalks where innocent bystanders could be injured and the equipment lost." *See* Memorandum For Police Commissioner Re: Police Officer Craig Yokemick, dated Feb. 28, 2001, attached to March 14, 2001 letter to the Court from Yokemick's counsel. Still, the Deputy Commissioner recommended dismissal of the charge "in the interests of justice", suggesting also that as an appropriate response, the NYPD consider sending Yokemick for retraining in the proper care and use of portable radios. *See id.*

Yokemick is entitled to his dreams, and this Court certainly would do nothing to stand in his way of indulging in them. But, except in a technical, outcome-driven sense, the Commissioner's dismissal of Yokemick's disciplinary charges, bristling as it is with verbal chastisement and reprove, may hardly be deemed such stuff as exoneration is made of. Even if, in its narrowest reading, the Commissioner's decision cleared Yokemick of a departmental

accusation, Yokemick's argument for representation is unavailing.

First, whatever the Department's conclusion regarding the one charge Yokemick faced in the disciplinary proceeding— the improper use of a police radio—the decision leaves other issues unresolved. Examining Yokemick's conduct, at the time of the Corporation Counsel's denial of representation, a sufficient factual basis existed to support a reasonable conclusion that other alleged wrongful acts or omissions by Yokemick [2] could have fallen outside the scope of his official duties and violated agency regulations in other respects. *See, e.g., Mercurio,* 592 F.Supp. at 1245 (court granted the City's motion where, though the Police Commissioner approved stipulations dismissing disciplinary charges against defendant officers without adjudication of guilt or innocence, the City took the position that the disposition was not an exoneration and moved to withdraw representation).

Second, the language of § 50–k(5) does not support Yokemick's argument. The statute provides that if "the act or omission upon which the court proceeding against the employee is based" is also the basis for the agency disciplinary proceeding, the City may withhold representation, unless the resolution of the disciplinary proceeding exonerated the employee *"as to such act or omission."* G.M.L. § 50–k(5) (emphasis added).

As discussed above, the acts or omissions that form the basis for the court proceeding Banks instituted against the City and Yokemick do not rest solely on Yokemick's improper use of his radio; they extended well beyond the limited subject of the Department's single disciplinary charge against Yokemick. Accordingly,

**2.** These include, for example, excessive force, failure to report Kenneth Banks's head injuries, and failure to procure adequate medical treatment.

even if technically Yokemick could be deemed "exonerated" with regard to a claim that he improperly used his radio, it would not relieve him of potential liability for the myriad other acts or omissions Banks asserts in this proceeding that could have been outside the scope of Yokemick's employment and in violation of agency rules.

As to those other allegations, whether or not the agency chose to regard them as a sufficient basis for disciplinary charges, the Corporation Counsel could reasonably have found sustainable grounds in them for denying representation. It would be peculiar for this Court to hold that the Corporation Counsel wrongfully denied or withheld representation for Yokemick's conduct arising out of the improper use of his radio, while larger claims entailing a range of more serious misconduct—as to which Yokemick could not assert agency exoneration—remained pending.

Yokemick cannot disaggregate his conduct this way, entitling himself to representation for the full range of his numerous alleged wrongful actions, on the basis of a dismissal of the one administrative charge his agency chose to lodge against him. This Court concludes that the Corporation Counsel's decision to deny Yokemick representation cannot be deemed arbitrary or capricious under these circumstances.

## B. *INDEMNIFICATION*

Yokemick's assertion of a right to indemnification pursuant to G.M.L. § 50–k(3) raises more complex issues with which courts in this District have grappled absent definitive rulings by New York courts. *See Nevares,* 1998 WL 265119, at *9 (observing that "[t]he contour of an employ-

ee's right to indemnification pursuant to G.M.L. § 50–k(3) ... does not appear to have been decided by any New York State Court"); *Harris,* 921 F.Supp. at 1060–61; *Woo v. City of New York,* No. 93 Civ.7007, 1996 WL 457337, at *13 (S.D.N.Y. Sept. 6, 1996); *see also Jocks,* 97 F.Supp.2d at 312–13.

These cases have identified a number of open issues relating to the application of G.M.L. § 50–k, some of them raised by the parties in the dispute now before this Court. These questions include:

● When does the claim for indemnification ripen? May the claim be considered in connection with a third-party cross-claim in the plenary action for liability? (*see Harris,* 921 F.Supp. at 1061; *Mercurio,* 592 F.Supp. at 1245) or only upon the rendering of a judgment on the merits determining the employee's liability to which indemnification may apply? *See Behar,* 1999 WL 212685, at *4; *Nevares,* 1998 WL 265119, at *7; *Bolusi,* 671 N.Y.S.2d at 478; *see generally McDermott v. City of New York,* 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460, 461 (1980);

● When does the claim arise for purposes of determining when the statute of limitations begins to run, and what is the applicable period of limitations? *See Harris,* 921 F.Supp. at 1062; *Pitt v. City of New York,* No. 82 Civ.3349, 1984 WL 1323, at *7 (S.D.N.Y. Dec. 10, 1984) (noting that claims for indemnification do not ripen, and the statute of limitations does not begin to run, until a judgment in the underlying action is paid); *cf.Frontier Ins. Co. v. State,* 87 N.Y.2d 864, 638 N.Y.S.2d 933, 662 N.E.2d 251 (1995);[3]

---

**3.** In *Frontier,* the New York Court of Appeals held that the four-month statute of limitations

applied to a claim for the costs of a defense under § 17 of the Public Officers Law and

● May a claim for indemnification be asserted exclusively in an Article 78 proceeding, where the Corporation Counsel's decision to deny or withhold the entitlement is measured by an arbitrary and capricious standard of review and the question is decided as a matter of law by the court without a jury?

● May a demand for indemnification be asserted as a third-party cross-claim, and treated as though it were an action for declaratory judgment, in connection with litigation of the underlying claims against the municipal employee?

● May an indemnification determination be made by the Court alone as a matter of law? Or is the question one which, in a federal court proceeding, entitles the parties to a jury trial coextensive with the right that exists as to the underlying issues of liability?

● If the matter is a legal one for the Court, should the applicable standard of review be the same one that applies in an Article 78 proceeding? Or should it be the standard that would govern the liability determination submitted to the jury?

Federal courts have taken different approaches in addressing these issues. In *Harris*, Judge Scheindlin held that a § 50–k(3) demand for indemnification could be asserted as a third-party action and submitted to the same jury as the plenary action. *See Harris*, 921 F.Supp. at 1062 ("Judicial economy dictates trying the issues in the same court and to the same jury.") The *Harris* court denied the City's request for severance of the indemnification claim, deciding instead to bifurcate the trial and to submit the defendant's indem-

nification claim against the City to the jury only if the jury decided in plaintiff's favor on liability. *See id.* Although Judge Scheindlin indicated that "[c]areful instructions to the jury will minimize any possible confusion," the court did not articulate the standard of review the jury was to apply. *Id.*

In *Jocks*, the court also elected, for the same reasons of judicial economy cited by *Harris*, to assert jurisdiction over the indemnification claim as part of the underlying action. *See Jocks*, 97 F.Supp.2d at 312. Judge Platt, however, decided that the court itself would rule on the indemnification claim after the jury had returned a verdict finding the municipal employee liable. Relying on *Williams*, the *Jocks* court applied the arbitrary and capricious standard to the defendant's indemnification claim. *See id.* at 313. Judge Platt denied the defendant's motion for indemnification, noting that while the Corporation Counsel's determination gave every appearance of being arbitrary and capricious, it nonetheless could be set aside only if it lacked a factual basis, a finding the evidence in that case did not support. *Id.*

Confronted with similar dilemmas and unsettled issues, the court in *Nevares* took a different tack. There, observing that the scope of an employee's right to indemnification pursuant to G.M.L. 50–k(3) raised novel and complex issues of New York law that should be decided in the first instance by New York courts, Judge Koeltl declined to exercise supplemental jurisdiction. *See Nevares*, 1998 WL 265119, at *8. In *Nevares*, however, unlike the case now before this Court, many of the defendant employees were the subject of still pending departmental disciplinary proceedings.

---

that the limitations period could not be circumvented by asserting a right to such costs in the context of an underlying action that is

subject to a longer period of limitations. *See* 638 N.Y.S.2d 933, 662 N.E.2d at 253.

Judge Koeltl thus noted that pursuant to § 50–k(5), the City was entitled to refuse indemnification until the disciplinary charges were resolved. To this extent, the *Nevares* court deemed the indemnification claims premature. Thus, allowing a jury to decide the third-party indemnification claims before the agency adjudication was concluded risked a possibility of inconsistent outcomes, since the City is authorized to withhold indemnification in the event an employee is not exonerated in the administrative proceeding. *See id.* at *7.

In the face of these uncertainties, this Court offers some observations and considerations as aids in crafting a resolution of the issues at hand. As a point of departure, the Court notes that the predicate for both determinations—of representation under § 50–k(2) and indemnification pursuant to 50–k(3)—rests on the same requirement: a finding that the acts or omissions upon which the claim for representation or indemnification arose "occurred while the employee was acting within the scope of his employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency" at the time the alleged acts or omissions occurred or the alleged damages were sustained. G.M.L. § 50–k(2) and § 50–k(3). But, while § 50–k(2) explicitly assigns the authority for making this finding to the Corporation Counsel, § 50–k(3) does not make reference to the Corporation Counsel, a distinction the parties here cite in contending that the Article 78 "arbitrary and capricious" standard of review applies to the Corporation Counsel's refusal of representation under § 50–k(2), but not to a denial of indemnification pursuant to § 50–k(3).

The mandate of indemnification under § 50–k(3), however, is premised either on the existence of a judgment obtained in court against the employee or upon the settlement of a claim approved by the Corporation Counsel and the City Comptroller. Temporally, both the settlement of a claim and a judgment in court occur at a later point than the Corporation Counsel's initial determination of whether or not to provide representation to the employee.

Accordingly, the statute appears to contemplate several distinct possibilities: (1) that Corporation Counsel, upon finding that the employee's acts or omissions at issue fell outside the scope of his public duties and violated agency rules, could withhold a determination to indemnify until after a settlement is concluded or a court judgment is rendered; (2) that the Corporation Counsel undertakes representation based on a finding that the employee's conduct satisfied the scope of employment standard, but the City then withholds indemnification if a judgment determining the facts regarding the employee's acts or omissions declares otherwise; or (3) that whether or not the Corporation Counsel provides representation, a judgment on the merits of the employee's conduct may determine that some claims for which liability is established may be based on acts or omissions for which indemnification is permissible, while other such claims are not, in which event the employee conceivably could be entitled to partial indemnification.

Given these variables, this Court does not read particular significance into the absence of reference in G.M.L. § 50–k(3) to the finding made by the Corporation Counsel as to the employee's standard of conduct. Nor does the Court view the distinction as compelling a conclusion that the standard which applies to the Corporation Counsel's indemnification determination must differ from that which guides a denial of representation.

Two provisions of the statute lend support to these observations. First, § 50–

k(5) authorizes the City to withhold *both* representation and indemnification during the pendency of an agency disciplinary proceeding. In that event, the determination as to both entitlements presumably would be grounded on the same finding by the Corporation Counsel that the employee's conduct falls outside the bounds of official duties and agency rules.

More significantly, § 50–k(3) further conditions the right to indemnification and implicitly provides an indication of when the entitlement arises. It does so through the proviso that indemnification does not apply "where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee." G.M.L. § 50–k(3). This qualifier clearly presumes that, except in the case of an approved settlement, the final indemnification determination would await a verdict on the merits in the plenary action.

For these reasons, the City argues here, as it has in other cases, that it generally does not make an indemnification decision until a verdict is rendered and the extent of any damages requiring indemnification is known. *See Nevares,* 1998 WL 265119, at *7. This policy places a practical constraint on the *Harris* approach of submitting the indemnification cross-claim to the jury. It demands that the City be ready to make a collective decision, almost immediately after the verdict, whether to indemnify an employee against whom a jury finds liability, with perhaps only a hasty assessment of the evidence to determine whether and to what extent indemnification may be appropriate. *See Nevares,* 1998 WL 265119, at *7.

Next, the Court turns to the one authoritative source offering guidance in resolving the uncertainties presented here. In *Williams,* the New York Court of Appeals held that whether an employee's acts were committed within the scope of his public employment and the discharge of his duties—and the employee was thus "entitled to representation by the Corporation Counsel *and indemnification by the City*"—are matters "to be determined in the first instance by the Corporation Counsel ... and *his determination may be set aside only if it lacks a factual basis,* and in that sense, is arbitrary and capricious." *Williams,* 486 N.Y.S.2d 918, 476 N.E.2d at 317 (internal citation omitted) (emphasis added).

The State's highest court thus ruled explicitly that the requisite finding with respect to *both* representation and indemnification is to be made initially by the Corporation Counsel and that "his determination", presumptively as to either or both entitlements, is subject to the arbitrary and capricious standard. The *Williams* formulation has been cited and applied by other New York courts. *See Wong,* 174 A.D.2d 486, 571 N.Y.S.2d 262, 263 (1991); *Young v. Koch,* 128 Misc.2d 119, 487 N.Y.S.2d 918, 924 (N.Y.Sup.Ct. 1985).

The particular matter at issue in *Williams* implicated only Corporation Counsel representation and thus an application of § 50–k(2). On this basis, Banks suggests that the reference in *Williams* to indemnification should be treated as dictum. The New York Court of Appeals's statement of statutory construction, however, is set forth not as an aside or in collateral discussion of an incidental subject, but expressly in the operative words of its holding. The language conveys unequivocally an authoritative interpretation of state legislation. Only by an extraordinary display of presumption or arrogation of power would another court dismiss as mere dictum this pronouncement by the State's highest court construing a state law.

■ Moreover, even if considered dictum, the language in *Williams* mentioning indemnification cannot be ignored. Federal courts called upon to interpret and apply state statutes, especially those not definitively construed by state judicial authority, are not free to disregard relevant pronouncements by a state's highest court, even if such statements may be regarded as dicta. Principles of federalism, comity, and common sense obligate federal courts to assign due weight to any evidence, including dictum, that may shed light on how the state courts would read local law. *See Hawks v. Hamill*, 288 U.S. 52, 58, 53 S.Ct. 240, 77 L.Ed. 610 (1933) (Cardozo, J.) ("In controversies so purely local, little gain is to be derived from drawing nice distinctions between dicta and decisions.").

Though no settled doctrine has been articulated by the Second Circuit to guide district court treatment of state court dictum, other circuits have declared firmly that federal courts interpreting state law must give appropriate consideration to any clear expressions of intent concerning application of state statutes by the state's highest courts, even if such statements may be deemed dicta. *See Union Pacific R.R. Co. v. Reilly Indus., Inc.*, 215 F.3d 830, 840 (8th Cir.2000) (in predicting how the state's highest court would interpret a statute not definitively construed, a federal court "may consider relevant state precedent, analogous decisions, *considered dicta* . . . and other reliable sources.") (emphasis added); *National Surety Corp. v. Midland Bank*, 551 F.2d 21, 30 (3rd Cir.1977) (noting that "courts accepting state dicta . . . do so not in blind adherence . . . but rather in deference to the persuasiveness of its reasoning."); *Rocky Mountain Fire & Cas. Co. v. Dairyland Ins. Co.*, 452 F.2d 603, 604 (9th Cir.1971); *Hartzler v. Chesapeake and Ohio Ry. Co.*, 433 F.2d 104, 107 (7th Cir.1970); *see also Cash Energy, Inc. v. Weiner*, 768 F.Supp. 892, 894 (D.Mass.

1991) ("When no directly relevant precedents are available to guide this court's resolution of an issue of interpretation of a state statute, *dicta* (and even implied dicta) in the state court opinions have substantial weight.").

■ Based on the foregoing analysis, this Court has crafted an approach for resolving the dispute at hand that combines and builds upon the wisdom of the three courses that the other courts have followed. This Court's method is based on several essential lessons and principles culled from the cases. First are the values, stressed in *Harris*, of judicial economy, convenience and fairness that would be fostered by the Court exercising supplemental jurisdiction to enable the parties to try the issues in the same forum at the same time. *See Harris*, 921 F.Supp. at 1061.

This interest would not be advanced by compelling Yokemick, as the City has argued, to await a verdict and the City's subsequent determination of whether to indemnify him, and then, if the decision runs against him, to challenge it in a separate Article 78 proceeding in state court. The drawbacks of the City's proposal are obvious. It places an additional burden on Yokemick to expend resources in a new filing before another court whose own time and judicial resources would be spent becoming acquainted with the matter and otherwise duplicating efforts already expended here. Accordingly, the Court will retain jurisdiction to decide Yokemick's indemnity cross-claim.

Second, the principles of comity and federalism mentioned above must be considered. The Court has already acknowledged that substantial doubts permeate application of G.M.L. § 50–k by reason of the unresolved, novel and complex state law issues which prompted the *Nevares*

court to decline jurisdiction. In fact, because there is no indication of diversity of citizenship here, upon the resolution of the federal action, this Court would maintain only pendent jurisdiction to decide the indemnification claim which rests solely on state law. *See Mercurio*, 592 F.Supp. at 1245 (treating cross-claims for indemnification following a jury verdict against police officers as motions for summary judgment decided by the Court).

Recognizing these uncertainties, this Court believes that it should treat Yokemick's indemnification cross-claim—as much as possible—as a proceeding instituted in state court to contest an unfavorable indemnification decision by the City. In light of the doubts surrounding the proper application of still open state law principles here, it would not serve the interests of the fair administration of justice to promote a federal court resolution of this matter that would vary substantially from that which would prevail were the same issue litigated in a state court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Borrowing lessons derived from principles of diversity jurisdiction, because the appropriate method New York law provides to contest an alleged wrongful denial of indemnification to a City employee would be Article 78, this Court will apply the essential rules underlying an Article 78 proceeding. *See Nevares*, 1998 WL 265119, at \*8 ("The New York Court of Appeals has made it clear that a claim for indemnification may be raised in an Article 78 proceeding in which there is no right to a jury trial and where the Corporation Counsel is held to an arbitrary and capricious standard of review.") (citing *Williams*, 486 N.Y.S.2d 918, 476 N.E.2d at 317); *Young*, 487 N.Y.S.2d at 924 (acknowledging that the arbitrary and capricious standard of review would be relevant in a claim for indemnification under G.M.L. § 50–k).

Banks takes exception to the City's position that the indemnification cross-claim must be decided as a matter of law, arguing that in this Court, federal law, including the applicable federal standard of review and the right to a jury trial, must prevail. This Court disagrees.

Were the Court to disregard the rigorous standard of review envisioned by the statutory scheme of G.M.L. § 50–k and apply a lower standard than would control resolution of the same issue in a state court, it could significantly affect the outcome of the litigation and violate the dual goals of the *Erie* doctrine: discouragement of forum-shopping and avoidance of inequitable administration of the laws. *See Hanna v. Plumer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Guaranty Trust Co. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *see also Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949).

In applying G.M.L. § 50–k, therefore, this Court believes it is obliged to employ the standard of review that the State's highest court has enunciated as governing judicial assessment of the Corporation Counsel's indemnification determination. *See, e.g., Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 429–31, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (New York statute codifying a standard for evaluating review of jury verdicts more rigorous than the corresponding federal court test, held to be substantive and applicable in federal court under the *Erie* principle); *Mayer v. Gary Partners & Co., Ltd.*, 29 F.3d 330, 333 (7th Cir.1994) ("The burden of persuasion is tied to the definition of the right, so state law determines whether the plaintiff must prove the case by a preponderance, by clear and convincing evidence, or by

some other standard.") (citing *Stoner v. New York Life Ins. Co.,* 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940)).

Similarly, New York law holds that application of the "arbitrary and capricious" standard is an issue to be decided as a matter of law by the court alone. *See Nevares,* 1998 WL 265119, at *8; *Catlin v. Sobol,* 77 N.Y.2d 552, 569 N.Y.S.2d 353, 571 N.E.2d 661, 666 (1991). Application of this rule demands a judgment by the Court that the decision challenged is not rational in that it was not supported by a sufficient factual basis. *See Williams,* 486 N.Y.S.2d 918, 476 N.E.2d at 317. This type of determination, not only under New York law but under comparable principles in the federal system, is one entrusted solely to the court. *See, e.g.,* Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (arbitrary and capricious standard applicable to judicial review of actions of federal agencies); Fed.R.Civ.P. 50(a) (motion for judgment as a matter of law); Fed. R.Civ.P. 56 (motion for summary judgment); *see also Federal Communications Comm'n v. National Citizens Comm. for Broad.,* 436 U.S. 775, 802–03, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978); *Jocks,* 97 F.Supp.2d at 313.

Accordingly, a decision by this Court as a matter of law on whether an indemnification ruling by the Corporation Counsel is arbitrary and capricious would not implicate disputed issues of fact which, in a federal civil proceeding, would entail an "essential characteristic" of the federal court system that "distributes trial functions between judge and jury and, under ... the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury." *Gasperini,* 518 U.S. at 432, 116 S.Ct. 2211 (quoting *Byrd v. Blue Ridge Rural Elec. Coop., Inc.,* 356 U.S. 525, 537, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958)). Of course, the indemnification cross-claim at issue here arises in the context of the Court's exercise of supplemental jurisdiction, rather than in a diversity case. This Court finds no reasonable basis for drawing a distinction between federal court application of a controlling state statute through the exercise of supplemental jurisdiction in a federal question proceeding, as opposed to application of the same statute in a diversity case.

Thus, rather than submitting the merits of the indemnification determination to the jury, as did the *Harris* court, this Court will consider the claim as a matter of law after the jury has returned its verdict on the plenary action, and after the City has had a reasonable opportunity, following its assessment of the evidence at trial, to decide whether or not it will indemnify. Moreover, because the Court will treat the indemnification action as akin to an Article 78 proceeding, following *Williams* as well as the approach adopted by the court in *Jocks,* the Court will apply the arbitrary and capricious standard of review to the Corporation Counsel's decision.

In this regard, a caveat is in order. It bears recalling the condition of G.M.L. § 50–k(3) that the City's duty to indemnify does not arise "where the injury or damage resulted from the intentional wrongdoing or recklessness" of the charged employee. G.M.L. § 50–k(3). Consequently, in the event that the jury returns a verdict of liability on any part of Banks's claims whose legal elements are grounded fundamentally on findings that encompass intentional misconduct or recklessness, the Court will give such findings, if sufficiently supported by the trial evidence, controlling weight in assessing whether a denial of indemnification to Yokemick is arbitrary and capricious. *See Burthey v. Department of Corr.,* No. 93 Civ. 3230, 2000 WL 739570, at *1 (S.D.N.Y. June 8, 2000).

Finally, the Court should not overlook or discount the better part of valor the *Nevares* court displayed in choosing to decline jurisdiction in the face of many state law unknowns and variables similarly evident here. *See Nevares*, 1998 WL 265119, at *9. As a nod in that direction, following the jury's verdict in this action, should Yokemick and the City prefer to take their chances in litigating the indemnification determination in state court rather than here, the Court will entertain a stipulated dismissal of Yokemick's cross-claim without prejudice.

## III. *WITNESS FIFTH AMENDMENT PRIVILEGE*

Banks seeks to introduce at trial the depositions of two witnesses who are not scheduled to testify, Sergeant Krumm and Officer Geraghty. She claims that the exceptional circumstances required by Fed. R.Civ.P. 32(a)(3)(E) exist because (1) Krumm and Geraghty have asserted their Fifth Amendment privilege against self-incrimination; (2) they would be expected to make the same assertion at trial; and (3) they are therefore unavailable. Banks also requests that a negative inference instruction be given to the jury permitting it to view adversely the assertion of the Fifth Amendment privilege by Krumm and Geraghty as to Yokemick's defense. The Court denies this request.

### A. *RULE 32*

■ The general rule is that testimony at all trials must be live. Rule 32(a)(3) of the Federal Rules of Civil Procedure, however, provides limited exceptions to this requirement. Under the Rule, a party may use a deposition in a court proceeding for any purpose if the court finds that one of the following conditions exist: (A) the witness is dead; (B) the witness is at a distance greater than 100 miles from the place of trial or is out of the United States; (C) the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; (D) the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) a showing is made that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used. *See* Fed.R.Civ.P. 32(a)(3)(A)-(E). Thus, deposition testimony is only a substitute, not to be resorted to if the witness can appear in person. *See Arnstein v. Porter*, 154 F.2d 464, 470 (2d Cir.1946).

As a preliminary matter, Banks filed a motion to preclude the trial testimony of Geraghty and Krumm. In ruling on that motion, the Court determined that these witnesses, if called by the defense, would not be allowed to testify regarding any matters which they declined to address at their depositions.

■ Here, Banks is not barred from calling these individuals as witnesses if she needs their testimony as evidence. The Court has not been advised that either of these witnesses is absent unexpectedly; that Banks has attempted unsuccessfully through the issuance of subpoenas to secure their personal presence in Court; or that Yokemick has—by his actions—made either witness unavailable to appear at trial. The Court finds that Banks has not made a sufficient showing of exceptional circumstances simply because these witnesses may assert their Fifth Amendment privilege.

By contrast, the Court notes that Banks proposes to use the depositions of certain witnesses whose absences do satisfy the truly exceptional circumstances contemplated by Rule 32. For example, the Court is advised that two children of a

listed witness have just died and that another witness is about to undergo surgery. These other exceptional circumstances in no way resemble those relating to Krumm and Geraghty.

For the foregoing reasons, the Court concludes that no exceptional circumstances exist here that would allow Banks to introduce the depositions of Krumm and Geraghty at the trial.

## B. *INFERENCE*

■ Banks requests a charge that the jury be permitted to draw an adverse inference against Yokemick from the assertion of the Fifth Amendment privilege by Krumm and Geraghty.[4] While the Court believes that Yokemick's assertion of the Fifth Amendment justifies a negative adverse inference against him based on his own invocation, the Court does not find the requested charge appropriate as it pertains to the assertion of privilege by Krumm and Geraghty.

The Supreme Court has recognized that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). This principle has been extended to permit Fifth Amendment claims of privilege asserted by certain witnesses to be recognized as admissible and competent evidence introduced for their adverse inferential value against a defendant. *See LiButti v. United States,* 107 F.3d 110, 123 (2d Cir.1997); *Brink's, Inc. v. City of New*

*York,* 717 F.2d 700, 710 (2d Cir.1983); *see also Federal Deposit Ins. Corp. v. Fidelity & Deposit Co. of Maryland,* 45 F.3d 969 (5th Cir.1995); *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.,* 819 F.2d 1471 (8th Cir.1987); *Rad Servs., Inc. v. Aetna Cas. & Sur. Co.,* 808 F.2d 271 (3d Cir.1986).

The courts in these cases have declined to enunciate a blanket rule governing the drawing of adverse inferences from a non-party witness' invocation of the privilege against self-incrimination, preferring instead a case-by-case approach. *See e.g., LiButti,* 107 F.3d at 122. To guide the courts' consideration of this issue, the Second Circuit has declared that "the circumstances of a given case, rather than the status of a particular non-party witness, is the admissibility determinant." *Id.* at 121.

To this end, the *LiButti* court elaborated several non-exclusive factors: (1) the nature of the relevant relationships, identified by the court as "invariably ... the most significant circumstance" (*id.* at 123); (2) the degree of control of the party over the non-party witness; (3) the compatibility of the interests of the party and non-party witness in the outcome of the limitation; and (4) the role of the non-party witness in the litigation. *See id.* Whatever controlling consideration the trial court ultimately adopts, the Second Circuit cautioned that "the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth." *Id.* at 124.

---

**4.** Banks's proposed jury instruction states: "Officer Yokemick and every other police officer has a right under our Constitution to assert the Fifth Amendment privilege and to avoid furnishing evidence that might lead to their own criminal conviction. However, assertion of the Fifth Amendment justifies a negative adverse inference by you against that officer. That is, you can consider the fact that an officer invoked the Fifth Amendment as tending to disprove his testimony or his defenses." *See* Plaintiff's Proposed Jury Instructions, dated Jan. 5, 2001, at 9.

It is conceivable that the facts underlying the case at hand could support a sufficiently close relationship between Yokemick, Krumm, and Geraghty that might warrant the admission of the deposition testimony and the corresponding adverse inference charge against Yokemick. However, applying the guidelines described above, this Court concludes that the record shows insufficient evidence of the relevant relationships and the necessary degree of control to support granting Banks's request.

Krumm and Geraghty were key figures in the litigation because they were at the scene and presumably held discussions with Yokemick at the time of the events at issue. Originally they were named as defendants, and thus at the time of their invocation of the Fifth Amendment, their assertion of the privilege could have served to advance both their own and Yokemick's interests in the litigation. However, these witnesses have since settled with Banks, along with the numerous other defendants named by Banks. There is no indication that the circumstances that caused the witnesses to invoke the Fifth Amendment originally still exist, and that if called to testify in person, they necessarily would take the same posture.

Moreover, Banks's request for an adverse inference rests on the relationship between Yokemick and Geraghty as police patrol partners and on Krumm's status as the ranking officer at the scene. Without more, these ties do not strike the Court as sufficient to establish that Yokemick could exercise any form of control over Krumm or Geraghty to guide their testimony or to support a necessary inference that at this time their interests coincide. It is conceivable that police officers teamed on patrol could maintain a strained or even hostile relationship, or no relationship at all.

Ties of patrol partnership are not invariably close enough to sustain a conclusion that in offering sworn testimony one officer will always seek ways to protect the other. In theory, the claim of a Fifth Amendment privilege by Krumm and Geraghty may be consistent with their desire to protect only their own interests, without regard to Yokemick's. Because the record is devoid of a sufficient indication of Yokemick's actual relationships with Krumm and Geraghty, the Court cannot conclude that the introduction of the deposition evidence Banks requests and the negative inference charge would be appropriate.

Finally, in this case Yokemick and the two witnesses were not charged with a unitary act or common scheme of misconduct, such as conspiracy or fraud, that would easily permit the transference to Yokemick of a negative inference from one witness' refusal to testify under a claim of privilege. *See e.g., Brinks,* 717 F.2d at 708; *John Paul Mitchell Sys. v. Quality King Distribs., Inc.,* 106 F.Supp.2d 462, 471 (S.D.N.Y.2000). The roles Banks alleges Krumm and Geraghty played in Kenneth Banks's death are substantially different from that of Yokemick. Accordingly, as formulated, Banks's request for the jury to draw an adverse inference against Yokemick arising from Krumm's and Geraghty's invocation of the Fifth Amendment naturally raises a question: adverse inference of what? In the Court's view, such an inquiry under the circumstances presented here would not necessarily advance the search for truth.

### CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that defendant Yokemick's renewed motion for a stay of this action is denied; and it is further

**ORDERED** that defendant Yokemick's request for a determination that he is entitled, pursuant to G.M.L. § 50–k, to representation and indemnification by the City

of New York is denied, subject to further proceedings consistent with this Decision and Order; and it is further

ORDERED that plaintiff Banks's request for a jury instruction permitting the jury to draw an adverse inference against Yokemick by virtue of the invocation of the Fifth Amendment privilege against self-incrimination by police officers Krumm and Geraghty is denied.

SO ORDERED.