Foster, J.
Frances Ann McLaughlin, an infant six years of age, was visiting her uncle and aunt in West Deering, New Hampshire, during the Summer of 1952. While bathing in Whittemore Lake, she almost drowned and was carried from the lake in an unconscious condition. The local lifeguard administered first aid, and the Bennington Volunteer Fire Department was summoned. A fire department truck arrived shortly thereafter, and two men removed a resuscitator and some blankets from the truck. The resuscitator was placed over the infant’s mouth, and she was wrapped in blankets by a woman who identified herself as a nurse.
More heat was needed to revive the child, so the firemen returned to the truck and obtained some boxes containing ‘ ‘ heat blocks ”. The blocks were removed from their containers by the firemen who activated them and turned them over to the nurse. The nurse proceeded to apply several of them directly to the child’s body under the blankets. Subsequently, the child began to heave about and moan. At this point, the infant was taken, still wrapped in the blankets, to a doctor’s car and placed on the back seat. The heat blocks had fallen out from under the blankets. After a short stay at the doctor’s office, the infant was taken home, and that evening blisters were observed about her body. It was soon ascertained that she was suffering from third degree burns, and she was taken to the Peterborough Hospital where she underwent extensive treatment.
*66 The “ M-S-A Redi-Heat Blocks ”, which were applied to the infant’s body and caused the burns, were manufactured by Catalyst Research Corporation for defendant and packaged in defendant’s cardboard container at defendant’s plant and were sold and distributed by defendant to industrial houses, government agencies and departments for use in emergency. The “ heat blocks” actually were small magnesium blocks which were activated by raising the spring lever on the block, inserting a loaded cartridge therein, then permitting the spring lever to close and strike the cap of the cartridge, causing the firing-pin to ignite the chemical enclosed in the cartridge and to create the heat. The block was covered in its entirety by a red woolen insulating material called ‘ ‘ flocking ’ ’ which appeared and felt like a “blanket” or “flannel” covering or just ordinary “ wool ”. Tests made upon the device indicated that the block attained a high surface temperature of 204 degrees Fahrenheit within two minutes after triggering in one case and a high of 195 degrees Fahrenheit within three minutes after triggering-in another case. In both cases, after 39 minutes, the blocks retained a temperature of 138 degrees.
Affixed to each block on top of the 1 ‘ flocking ’ ’ was an oval-like label containing the trade name of the block, and the name and design of the defendant. The blocks and two cartridges were sold in cardboard containers which contained these words in bold capital letters on the face thereof:
“ALWAYS READY FOR USE”
“ ENTIRELY SELF CONTAINED ”
“ ONE HOUR’S HEAT PER CHARGE ”
“ TOP HEAT IN ONE MINUTE ”
“ NO LIQUIDS USED TO OPERATE ”
“ IMPERVIOUS TO HEAT, COLD AND MOISTURE —KEEPS INDEFINITELY ”•
On both ends of the container, instructions were given as to how to order further charges or cartridges, thus revealing that the blocks could be reused over and over again. On the opposite face of the container, three small diagrams were printed, demonstrating how to activate the blocks, and alongside the diagrams in «mall print were the “ Instructions for use ” which read as follows:
*67 “ When fast emergency heat is needed for victims of accident, exposure, or sudden illness, the M. S. A. Bedi-Heat Block is always ready for service. Fully raise the activating lever . . ;
“ Insert the Bedi-Heat Charge into the Block’s receptacle — plain end first — and release the lever.
“ Note: The activating lever must be raised to maximum
stroke before releasing, or the charge will not activate . . .
“ The lever indents the head of the Bedi-Heat Charge, creating top heat within one minute. Retain Charge in Block for at least one-half hour.
“ Wrap in insulating medium, such as pouch, towel, blanket or folded cloth.”
The particular heat blocks involved were sold by defendant for use by the Bennington Fire Department in 1947 or 1948. At the time of the sale, defendant’s representative demonstrated the proper mode of use in the Town Hall. Several firemen were present. The representative warned everyone that the heat block was to be covered with a towel or some other material to keep the block from coming into contact with the skin.
Among the firemen who were present at the scene of the accident herein was Paul Traxler. He testified that he had been present when defendant’s representative demonstrated the blocks; that he recalled being told not to use the blocks without further insulating them; that, furthermore, instructional classes had been held as to proper use of the blocks prior to the acci- . dent; that he was fully aware that the blocks were to be wrapped in a towel or blanket before they were used; and that he had told the “nurse” at the scene to wrap up the blocks before using. Nevertheless, the blocks were applied directly to the infant’s person under the blankets, while the fireman, Traxler, who had activated the blocks, stood next to her and watched. The infant’s aunt could recall no warning given by the firemen to the nurse as to the danger in applying the unwrapped blocks to the infant’s body.
This action was commenced by the infant and her father for loss of services against the defendant, the exclusive distributor of the heat blocks, upon the theory that it had failed adequately to warn the public of the danger involved in the use of the blocks and to properly “instruct” ultimate users as to the “ proper application of the said blocks ”.
*68 After a jury trial in Supreme Court, Nassau County, a verdict was returned in favor of the infant plaintiff in the sum of $17,500, and in favor of her father in the sum of $2,500, and judgment was entered thereupon. The Appellate Division unanimously reversed and ordered a new trial, unless the infant plaintiff stipulated to reduce the verdict in her favor to $10,000, and her father stipulated to reduce the verdict in his favor to $1,000, in which event the judgment was to be affirmed as modified. Plaintiffs so stipulated, and final judgment was entered.
Defendant appeals, as of right, contending that the plaintiffs failed to prove any actionable negligence on the part of the defendant, and that the trial court committed reversible error in its charge. Defendant preserved both of these issues for review by timely motions to dismiss the complaint at the close of the plaintiffs’ case and the entire case and by exception to the portion of the charge complained of.
The court instructed the jury that, if they found that the heating block was an inherently dangerous article, then the defendant distributor was under a duty to give reasonable warning of latent dangers in the use thereof, if any were known to it. This was correct under the common law of New Hampshire which governs this case (Lenz v. Standard Oil Co. of N. Y., 88 N. H. 212) and under our own common law, which was shown to be the same as that of the situs of the occurrence (Howard Stores Corp. v. Pope, 1 N Y 2d 110,115; Beckhusen v. Lawson Co., 9 N Y 2d 726, 727; Genesee County Patrons Fire Relief Assn. v. Sonneborn Sons, 263 N. Y. 463, 466-468; see, also, Levczuk v. Babcock & Wilson Co., 10 N Y 2d 830; for cases involving misleading labeling of inherently dangerous commodity, see Commissioners of State Ins. Fund v. City Chem. Corp., 290 N. Y. 64, 69; Willson v. Faxon, Williams & Faxon, 208 N. Y. 108, 114; Thomas v. Winchester, 6 N Y 397). The duty to warn of latent dangers extends to the original or ultimate purchasers of the product (Commissioners of State Ins. Fund v. City Chem. Corp., 290 N. Y. 64, 69, supra), to employees of those purchasers (Beckhusen v. Lawson Co., 9 N Y 2d 726, supra; Levczuk v. Babcock & Wilson Co., 10 N Y 2d 830, supra), and to third persons exposed to a foreseeable and unreasonable risk of harm by the failure to warn (Howard Stores Corp. v. *69 Pope, 1 N Y 2d 110, supra; Thomas v. Winchester, 6 N Y 397, supra).
The jury, under the court’s instructions, could have found that a hidden or latent danger existed in the use of the product, or at least that the form and design of the product itself, together with the printing on the container, could mislead ultimate users as to the need for further insulation (cf. Campo v. Scofield, 301 N. Y. 468). The blocks were dressed in “flocking” and appeared to be insulated, and the bold lettering on the containers revealed that the blocks were “ ALWAYS READY FOR USE” and “ENTIRELY SELF CONTAINED ”, all of which seemed to indicate that nothing extrinsic to the contents of the package was needed. And inasmuch as the blocks were designed for use on the human body, and if improperly used could cause severe injuries, the jury was justified in finding that the final sentence of the instructions, found in small print on the back side of the containers, advising use of a further insulating medium, was totally inadequate as a warning commensurate- with the risk; indeed, they were entitled to find that the instructions, not particularly stressed, did not amount to a warning of the risk at all, and that it was foreseeable that the small print instruction might never be read, and might be disregarded even if read (see McClanahan v. California Spray-Chem. Corp., 194 Va. 842; Tampa Drug Co. v. Wait, 103 So. 2d 603 [Fla. Sup. Ct., 1958]; Maize v. Atlantic Refining Co., 352 Pa. 51; Dillard and Hart, Product Liability: Directions for Use and the Duty to Warn, 41 Va. L. Rev. 145; Petzold v. Roux Labs., 256 App. Div. 1096). It also was foreseeable, and the jury could have found, that the blocks would be reused ultimately by persons without notice of the risks involved in failing to insulate, long after the cardboard containers bearing the so-called “warning” had been dispensed with, and that the distributor would be liable to such unwarned ultimate users. The containers themselves encouraged such reuse, and told how new “ charges ” could be obtained.
But the true problem presented in this ease is one of proximate causation, and not one concerning the general duty to warn or negligence of the distributor. In this regard the trial court instructed the jury that the defendant would not be liable if 11 an actual warning was conveyed to the person or persons *70 applying the blocks that they should be wrapped in insulation of some kind before being placed against the body ” for in that event the “ failure to heed that warning would be a new cause which intervened.” Subsequently, and after the jury retired, they returned and asked this question: “ Your Honor, if we, the jury, find that the M. S. A. Company was negligent in not making any warning of danger on the heat block itself, but has given proper instructions in its use up to the point of an intervening circumstance (the nurse who was not properly instructed), is the M. S. A. Company liable 1 ”
The trial court answered as follows: ‘1 Ladies and gentlemen of the jury, if you find from the evidence that the defendant, as a reasonably prudent person under all of the circumstances should have expected use of the block by some person other than those to whom instruction as to its use had been given, either by the wording on the container or otherwise, and that under those circumstances a reasonably prudent person would have placed warning words on the heat block itself, and if you find in addition to that that the nurse was not warned at the scene and that a reasonably prudent person in the position of the nurse, absent any warning on the block itself, would have proceeded to use it without inquiry as to the proper method of use, then the defendant would be liable.” Counsel for the defendant excepted to that statement. The jury then returned its verdict for the plaintiffs.
From the jury’s question, it is obvious that they were concerned with the effect of the fireman’s knowledge that the blocks should have been wrapped, and his apparent failure to so advise the nurse who applied the blocks in his presence. The court in answering the jury’s question instructed, in essence, that the defendant could still be liable, even though the fireman had knowledge of the need for further insulation, if it was reasonably foreseeable that the blocks, absent the containers, would find their way from the firemen to unwarned third persons.
We think that the instruction, as applied to the facts of this case, was erroneous. In the cases discussed above, the manufacturer or distributor failed to warn the original vendee of the latent danger, and there were no additional acts of negligence intervening between the failure to warn and the resulting injury or damage. This was not such a case, or at least the *71 jury could find that it was not. Nor was this simply a case involving the negligent failure of the vendee to inspect and discover the danger; in such a case the intervening negligence of the immediate vendee does not necessarily insulate the manufacturer from liability to third persons, nor supersede the negligence of the manufacturer in failing to warn of the danger (Rosebrock v. General Elec. Co., 236 N. Y. 227; Sider v. General Elec. Co., 203 App. Div. 443, affd. 238 N. Y. 64).
In the case before us, the jury obviously believed that the fireman, Traxler, had actual knowledge of the need for further insulation, and the jury was preoccupied with the effect of his failure to warn the nurse as she applied the blocks to the plaintiff’s person. The jury also could have believed that Traxler removed the blocks from the containers, thereby depriving the nurse of any opportunity she might have had to read the instructions printed on the containers, and that Traxler actually activated the blocks, turned them over, uninsulated, to the nurse for her use, and stood idly by as they were placed directly on the plaintiff’s wet skin.
Under the circumstances, we think the court should have charged that if the fireman did so conduct himself, without warning the nurse, his negligence was so gross as to supersede ■ the negligence of the defendant and to insulate it from liability. This is the rule that prevails when knowledge of the latent danger or defect is actually possessed by the original vendee, who then deliberately passes on the product to a third person without warning (see Stultz v. Benson Lbr. Co., 6 Cal. 2d 688; Catlin v. Union Oil Co., 31 Cal. App. 597; Olds Motor Works v. Shaffer, 145 Ky. 616, 620-621; Foster v. Ford Motor Co., 139 Wash. 341; Scurfield v. Federal Labs., 335 Pa. 145).
In short, whether or not the distributor furnished ample warning on his product to third persons in general was not important here, if the jury believed that Traxler had actual notice of the danger by virtue of his presence at demonstration classes or otherwise, and that he deprived the nurse of her opportunity to read the instructions prior to applying the blocks. While the distributor might have been liable if the blocks had found their way into the hands of the nurse in a more innocent fashion, the distributor could not be expected to foresee that its demonstrations to the firemen would callously *72 be disregarded by a member of the department. We have indicated that knowledge of the danger possessed by the original purchaser, knowledge actually brought home to him, might protect the manufacturer or distributor from liability to third persons harmed by the failure of the purchaser to warn, where the purchaser had the means and opportunity to do so (see Howard Stores Corp. v. Pope, l N Y 2d 110, 115, supra; Rosebrock v. General Elec. Co., 236 N. Y. 227, 240-241, supra; Sider v. General Elec. Co., 203 App. Div. 443, 450, affd. 238 N. Y. 64, supra).
Here, the jury might have found that the fireman not only had the means to warn the nurse, but further that, by his actions, he prevented any warning from reaching her, and, indeed, that he actually had some part in the improper application of the blocks. Such conduct could not have been foreseen by the defendant.
The judgment should be reversed and a new trial granted, with costs to abide the event.