**John Joseph MULL, Plaintiff-Appellant,**

v.

**FORD MOTOR COMPANY, Inc.,**
**Defendant-Appellee.**

**No. 7, Docket 30304.**

United States Court of Appeals
Second Circuit.

Argued Sept. 21, 1966.

Decided Nov. 9, 1966.

Lawrence Lauer, New York City, for plaintiff-appellant.

George J. Conway, New York City, for defendant-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

The plaintiff, John Mull, appeals from a judgment of the United States District Court for the Southern District of New York, entered December 13, 1965, for the defendant, Ford Motor Company, upon a directed verdict after trial, in a diversity negligence action, and from an intermediate order entered August 6, 1962, also in favor of Ford Motor Company, dismissing the cause of action for breach of warranty on the ground that appellant Mull was neither an ultimate consumer nor a user of the vehicle that caused the accident. We find no error in the decisions below, and affirm.

On Sunday morning, December 21, 1958, Mull was packing his car, which was parked on Madison Avenue between 40th and 41st Streets in Manhattan. While he was stationed at the rear of the car to arrange the trunk, he was struck by a 1958 Ford taxi cab, owned by the Colt Company, Inc.

As stipulated by both parties' attorneys in the pre-trial order,

"The said taxi cab on December 21, 1958 was operated by one Max Fermaglick, in a southerly direction on Madison Avenue approaching 41st Street. The pace of traffic caused him to reduce the speed of the cab. The cab stalled. Fermaglick got out of the cab and opened the hood and found he was unable to correct the trouble. He closed the hood and returned to the cab and attempted to move it to the curb by using the accelerator and starter of the cab, a process known as 'bucking.' While Fermaglick was so engaged, the hood flew up in front of the windshield, blocking his vision. Fermaglick did not stop the cab but proceeded with his 'bucking' maneuver to bring the cab to the curb. As he got near the curb, the cab struck the plaintiff pinning him between the rear of his car where he was standing engaged in loading his car and the front of the cab."

It was also stipulated that the taxi was manufactured by the Ford Motor Company and delivered directly to the Colt Company, Inc., in New York City, on September 2, 1958. It had been driven 35,000 miles at the time of the accident.

Mull commenced this action against the driver, the Colt Company, Inc., other related corporations, and their controlling shareholders,[1] the King Ford Motors, Inc. (the agency through which the taxi was purchased), and the Ford Motor Company. In January 1963, the Colt Company and its related corporations and shareholders conditionally settled with Mull for the sum of $100,000, and later, the case against King Ford Motors, Inc. was discontinued. Ford Motor Company was the only remaining defendant at the time of trial.

Evidence was offered to show that a proximate cause of the accident was a defective "detente spring" in the gear shift mechanism. At the end of the plaintiff's evidence the court reserved decision on a motion to dismiss the complaint. At the close of testimony, upon reviewing the pre-trial order and the transcript of testimony, Judge Cooper directed a verdict for the defendant. We affirm on the ground that the facts stipulated in the pre-trial order reveal that the cab driver's negligence was an effective intervening and superseding cause as a matter of law, breaking the causal chain, thus relieving Ford from liability for its alleged negligence in design and manufacture. I would further affirm Judge Edelstein's earlier order dismissing plaintiff's cause of action for breach of warranty for the reasons stated in his opinion, Mull v. Colt Co., 31 F.R.D. 154, 168–174 (S.D.N.Y.1962).

I. *The Negligence Action*

The plaintiff is bound by the statement of facts in the pre-trial order, which was stipulated to by his attorney.

We are reinforced in this conclusion here because the critical sentences contained in the stipulation came verbatim from plaintiff's own pre-trial memorandum,[2] and closely parallel statements in plaintiff's amended complaint.[3]

---

1. The Colt Company, Inc. was one of approximately 100 corporations owned and managed by various members of the Ackerman family, and Samuel and Marion Goodman. Each corporation had two taxi cabs registered to its corporate name, and each carried the minimum insurance allowable by statute. Judge Edelstein, on the basis of plaintiff's amended complaint, ruled that they were all proper parties, allowing plaintiff to pierce the corporate veil, 31 F.R.D. 154 (S.D.N.Y. 1962).

2. "While Fermaglick was so engaged, the hood flew up in front of the windshield, blocking his vision. Fermaglick did not stop the cab but proceeded with his 'bucking' maneuver[s] to bring the cab to the curb." Plaintiff's pre-trial memorandum, Record p. 613.

3. "SEVENTEEN: * * * That while the said defendant, Fermaglick, was so engaged in attempting to move the taxi cab, the front hood of the said taxi cab flew up, opening in front of the windshield of

It is a primary purpose of pre-trial stipulations, and pre-trial procedures in general, to simplify the issues of fact and to eliminate those not relied upon. Carefully drawn and negotiated stipulations avoid confusion, and save time and expense for the parties, as well as for the courts. Because of this, stipulations ought to be binding, not only to do justice between the parties, but to encourage their effective use. No request was made before Judge Cooper to modify this stipulation at trial. We must decide the questions on appeal on the basis of the facts as stated in the stipulation.

The question remains, whether, as a matter of law, the facts set forth in the stipulation should constitute such intervening negligence as to break the causal chain and justify taking the case from the jury.

The plaintiff assumes, and the defendant does not dispute, that the decision whether or not to direct a verdict is governed by the New York standard as to the sufficiency of evidence,[4] see N.Y. C.P.L.R. Rule 4401; Blum v. Fresh Grown Preserve Corp., 292 N.Y. 241, 54 N.E.2d 809 (1944), and we proceed on that basis.

Viewing the inferences from the stipulated facts in the light most favorable to the non-moving party, the district court properly directed a verdict for the defendant. By no rational process could the trier of fact find in favor of plaintiff Mull. The inferences to be drawn from the stipulated facts are clear. Although Fermaglick's action followed the failure of the taxi cab, and in that sense was dependent upon the alleged negligence of Ford, his negligence was so gross as to exonerate Ford, for when " * * * the hood flew up in front of the windshield, blocking his vision, Fermaglick did not stop the cab but proceeded with his 'bucking' maneuver to bring the cab to the curb." See McLaughlin v. Mine Safety Appliances Co., 11 N.Y.2d 62, 226 N.Y.S.2d 407, 181 N.E.2d 430 (1962).

---

said taxi cab and blocking the view of the said defendant, Fermaglick. That as a result thereof of his view being blocked and his not being able to observe the plaintiff standing in the said street alongside the said curb, the said defendant, Fermaglick, caused and allowed the said taxi cab to strike the said plaintiff * * *." Plaintiff's amended complaint, Record pp. 602–03.

4. We shall assume, as the plaintiff does, without deciding, that the state standard applies. The Supreme Court has twice declined to decide whether state or federal standards of sufficiency of evidence are controlling in diversity cases, see Mercer v. Theriot, 377 U.S. 152, 84 S. Ct. 1157, 12 L.Ed.2d 206 (1964); Dick v. New York Life Ins. Co., 359 U.S. 437, 444–445, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959); as has this Circuit on recent occasions, see Hooks v. New York Central R.R., 327 F.2d 259, 261 n. 2 (1964); Jacobs v. Great Atlantic & Pacific Tea Co., 324 F.2d 50 (1963); Evans v. S. J. Groves & Sons Co., 315 F.2d 335, 342 esp. n. 2 (1963); also O'Connor v. Pennsylvania RR. Co., 308 F.2d 911 (1962). Compare Byrd v. Blue Ridge Rural Elec. Co-op., 356 U.S. 525, 78 S.Ct. 893, 2 L. Ed.2d 953 (1958) with Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed.

645 (1943); Sampson v. Channell, 110 F.2d 754, 128 A.L.R. 394 (1 Cir.), cert. denied, 310 U.S. 650, 60 S.Ct. 1099, 84 L. Ed. 1415 (1940).

The majority of circuits have held that the Erie doctrine is "subservient to * * * the kind of jury trial in federal courts that is preserved by the Seventh Amendment," Reuter v. Eastern Air Lines, 226 F.2d 443, 445 (5 Cir. 1955), and that the federal standard should be applied where the issue is the sufficiency of the evidence required to take the case from the jury, see, e.g., Ettelson v. Metropolitan Life Ins. Co., 137 F.2d 62 (3 Cir. 1943); Davis Frozen Foods v. Norfolk Southern Ry., 204 F.2d 839 (4 Cir. 1953); Reuter v. Eastern Air Lines, supra (5 Cir.); Curry v. Pyramid Life Ins. Co., 271 F.2d 1 (8 Cir. 1959); Phipps v. N. V. Nederlandsche Amerikaansche S.M., 259 F.2d 143 (9 Cir. 1958); Diederich v. American News Co., 128 F.2d 144 (10 Cir. 1942), and their progeny. Contra: Trivette v. New York Life Ins. Co., 283 F.2d 441 (6 Cir. 1960). The Eighth Circuit has more recently left the question open however, see, e.g., Jiffy Markets v. Vogel, 340 F.2d 495, 498 (1965); Hanson v. Ford Motor Co., 278 F.2d 586 (1960), without mention of the *Curry* case, supra.

Ford's negligence, if any, could no longer be said to be a generating force.

■ Where a new force "intervenes" to bring about a result that defendant's negligence would not otherwise have produced, the defendant is generally held for that result only where the intervening force was foreseeable. See Harper & James, The Law of Torts § 20.5 (1956); Prosser, Law of Torts § 51 (3d ed. 1964). Neither the precise hazard nor the exact consequences need be foreseen. A judgment must be made as to whether the intervening act is "within the risk" reasonably created by the defendant's negligence.

■ Once the taxi had stalled, it is foreseeable that a car behind might collide with it, and the taxi might be propelled into the plaintiff. It might not be unforeseeable, once the taxi had stalled and its gears had jammed, that the driver might attempt to "buck" it to the curb, to remove it from the traffic lane even though plaintiff was in the street in front of him. But it is not foreseeable that once the hood had popped up, completely obscuring the driver's vision, that he would blindly continue to "buck" the cab. This is not within the risk reasonably to be perceived by the defendant Ford, and we find upon the facts as stipulated that Fermaglick's negligence as a matter of law was "so gross as to supersede the negligence of the defendant and insulate it from liability." McLaughlin v. Mine Safety Appliances Co., supra at 71, 181 N.E.2d at 435, 226 N.Y.S.2d at 414. The jury could not reasonably have found that Ford's alleged negligence was a proximate cause of plaintiff's injury, and therefore the directed verdict as to the cause of action in negligence was proper.

## II. *The Alleged Breach of Warranty*

Plaintiff's second cause of action was based upon breach of implied warranty. We are in agreement that it was properly dismissed. Judge Waterman and Judge Anderson reach this conclusion for reasons stated in Judge Anderson's concurring opinion. In my view New York law would not permit recovery for breach of implied warranty by a mere bystander. What follows is an expression of my own view.

We must look to the law of New York as controlling on this question. It is by no means certain that plaintiff's failure to prove causation for negligence also requires a dismissal on this cause of action. There is some reason to believe that there is no room for a "foreseeability" analysis in such "strict tort liability"[5] actions, since liability is based on considerations of social policy and not on fault.[6] The effect of intervening negligence has seldom been at issue because, until the recent assault on privity in manufacturers' strict liability cases, fact situations have rarely provided an opportunity for third party "intervenors."

I agree, however, with the reasons stated in Judge Edelstein's opinion, Mull v. Colt, 31 F.R.D. 154, 168–174 (S.D.N.Y. 1962), for dismissing the plaintiff's claim on the ground that Mull was neither an ultimate consumer nor a user of the vehicle that struck him. No New York cases have gone beyond these limitations. Indeed, there is much language in recent cases which indicates that considerable caution is being exercised by the New York Courts regarding the expansion of warranty concepts. In Greenberg v. Lorenz, 9 N.Y.2d 195, 200, 213 N.Y.S.2d 39, 42, 173 N.E.2d 773, 776, (1961), it was stated that the courts "should be cautious to take one step at

---

5. Goldberg v. Kollsman Instrument Corp., 12 N.Y. 432, 437, 240 N.Y.S.2d 592, 595, 191 N.E.2d 81, 83 (1963) (Desmond, Ch. J.) relying upon language in Greenman v. Yuba Power Products, Inc., 59 Cal.2d 67, 27 Cal.Rptr. 697, 337 P.2d 897 (1963) (Traynor, Ch. J.), and describing "strict tort liability" as "surely a more accurate phrase."

6. It is arguable that where no *unreasonable* act is required in order to affix liability, the ground for restricting liability to the foreseeable consequences of the act disappears, or at least in the event that "foreseeability" is an operative test where liability is not based on fault, it may be differently applied, see Harper & James, supra, § 20.5(9).

a time." See also Randy Knitwear v. American Cyanamid, 11 N.Y.2d 5, 16, 226 N.Y.S.2d 363, 371, 181 N.E.2d 399, 404 (1962) (concurring opinion). In Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963), the Court of Appeals declined to hold a manufacturer of an allegedly defective component part simply because adequate protection was provided by holding more immediate parties. While the *Goldberg* limitation has been rationalized as founded upon the comparative "ability to pay" of the respective defendants, it and the other appellate court decisions, see also Berzon v. Don Allen Motors, Inc., 23 A.D.2d 530, 256 N.Y.S.2d 643 (4th Dep't 1965); Vulpis v. City Line Lumber Co., 19 A.D. 2d 947, 245 N.Y.S.2d 325 (2d Dep't 1963), affirming without opinion 39 Misc.2d 842, 241 N.Y.S.2d 920 (Sup.Ct.), cast doubt upon the extent to which the New York courts would go. We should not go beyond present New York case law to allow this implied warranty action when there is no assurance that the New York courts would do so, see Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1955); West v. American Telephone & Telegraph Co., 311 U.S. 223, 236–238, 61 S.Ct. 179, 85 L.Ed. 139 (1940); also Bernhardt v. Polygraphic Co., supra, at 205–12 (Frankfurter, J., concurring); Hart & Wechsler, The Federal Courts and the Federal System, 628–630 (1953).

Affirmed.

ANDERSON, Circuit Judge (concurring):

I concur in the result reached by Chief Judge LUMBARD but would limit the decision to the determination, as a matter of law, that Fermaglick's negligence was the sole proximate cause of the injury, without basing it also upon the nonexistence of a right in one who is not a purchaser or user of the instrumentality to recover on an implied warranty. While the review of past decisions of the New York courts on the subject is unexceptionable, this is a changing area of the law and it is unnecessary for this court to enter it in this case. For Ford to be liable here its act or omission must have been a legal cause of the plaintiff's injury. If there was any negligence by Ford, it was entirely superseded by the negligence of Fermaglick, and the harm to the plaintiff could not under the circumstances be brought within the scope of foreseeability. Under the implied warranty approach it is necessary to ascertain whether or not any non-negligent act by Ford was a legal cause of plaintiff's injury, which may not be measured precisely the same way as legal cause in negligence liability; but whether the terms used to describe the means for determining legal cause are foreseeability or substantial factor or enterprise cost allocation, all of these concepts are devices for fixing the point beyond which a particular injury is not, in the eyes of the law, attributable to, or within the risk of, a particular event or activity. In my opinion, on the facts of this case, any act by Ford, whether negligent or non-negligent, was clearly beyond that point. But if, for example, a non-negligent defect in the steering mechanism of Fermaglick's cab caused the cab suddenly to swerve onto the sidewalk and hit the plaintiff who was standing there, then this court would have to decide whether plaintiff's lack of a purchaser or user relationship to Ford would bar his recovery under the applicable state law. Judge LUMBARD answers this in the affirmative but that is not the case which is before us.

WATERMAN, Circuit Judge (concurring):

I concur in the result reached by Chief Judge LUMBARD and in that portion of his opinion in which he points out that, as a matter of law, the cab driver's negligence was an effective intervening and superseding cause of the accident.

Because of the present fluid and uncertain condition of the law relative to the liability to bystanders of a manufacturer who markets a defective product I prefer Judge ANDERSON's approach to the is-

sue of whether plaintiff could maintain, on the facts present here, an action for breach by defendant of an implied warranty, and I agree with him that on these facts we need not reach the issue. Therefore, I concur in his entire opinion.