Maybell E. BANKS, as Administratrix of the Estate of her son Kenneth Banks, and on her own behalf Plaintiff,

v.

P.O. Craig YOKEMICK, Defendant.

No. 99 Civ. 10815 (VM).

United States District Court,
S.D. New York.

Aug. 9, 2002.

Jonathan S. Abady, Emery, Cuti, Brinckerhoff & Abady, PC, New York City, for Plaintiff.

James J. Skelton, Worth, Longworth, Bamundo & London, New York City, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Defendant Craig Yokemick ("Yokemick"), a New York City police officer, was found liable after a four-day jury trial for each of the claims brought against him by plaintiff Maybell Banks ("Plaintiff") as Administratrix of the estate of Kenneth Banks ("Banks"), her deceased son.[1] During pretrial proceedings, Yokemick filed a motion requesting an order to compel the City of New York ("the City") to represent him in this action and to indemnify him under the terms of New York General Municipal Law ("GML") § 50–k (2002) in the event he was found liable. The City responded that prior to a verdict on liability it was premature to decide whether Yokemick was entitled to indemnification. On the eve of trial, Yokemick repeated his request. At the time, the court denied Yokemick's claim for representation by the City and reserved decision on the indemnification claim, indicating that it would consider the issue, as a matter of law, when the trial concluded. The jury found Yokemick liable and awarded Plaintiff damages of $605,001.

After the verdict, Yokemick renewed his cross-motion and the City declined to indemnify him, asserting that the trial evidence confirmed that Yokemick had engaged in intentional wrongdoing and recklessness that disqualified him for the benefits of GML § 50–k. For the reasons discussed below, Yokemick's motion is denied.

## I. FACTUAL BACKGROUND

On October 29, 1998, Yokemick, seeking to arrest Banks, began chasing him on foot

1. Initially, Plaintiff brought separate causes of action against the City of New York, the New York City Police Department ("NYPD"), fifteen individual police officers and Yokemick. Plaintiff reached a settlement with the City. In consideration for payment of the $750,001 settlement plus attorney's fees, Plaintiff agreed to dismiss and release all claims against each named defendant with the exception of Yokemick.

while Banks was riding a bicycle on 125th Street near Madison Avenue in Manhattan. Unable to apprehend Banks, Yokemick threw his police radio at Banks from a distance of approximately ten feet in an attempt to stop him. The radio struck Banks in the back or side of his head, knocked him off of the bicycle, and caused him to fall to the ground.

The evidence presented at trial established the following: (1) Yokemick and other NYPD officers did not immediately report Yokemick's action and jailed Banks in the precinct instead of taking him to a nearby hospital; (2) the officers did not obtain timely and adequate medical treatment for Banks; and (3) Banks's life could not be saved by the time he was taken to the hospital on October 29, 1998. Banks went into a coma shortly after his arrival at the hospital and died on October 31, 1998 from the effects of brain injury.

Yokemick did not appear at trial. During his deposition he had invoked his privilege, under the Fifth Amendment of the United States Constitution, not to incriminate himself. The Court accordingly precluded Yokemick from introducing any evidence as to any subject he declined to address at his deposition. *See Banks v. Yokemick,* 144 F.Supp.2d 272, 275 (S.D.N.Y.2001). In his answer to the complaint, however, Yokemick claimed that he acted reasonably, in good faith and with justification in a proper and lawful exercise of his duties as a police officer. Yokemick also defended himself in an NYPD internal investigation and disciplinary proceedings concerning his conduct in this incident. The departmental hearings concluded prior to the trial of this action. There Yokemick claimed that: (1) his radio hit Banks on Banks's right shoulder and not his head, and (2) Banks's injuries did not occur when the radio hit him but rather when Banks head struck the sidewalk as

Yokemick tackled him during the course of a lawful arrest. (Interview of Police Officer Yokemick by New York Police Department Internal Affairs Bureau Case # 98–1306, dated September 27, 1999 ("Yokemick Interview"), attached to Declaration of Assistant Corporation Counsel Beth Hoffman ("Hoffman Decl.") as Ex. A, at 8.) Yokemick pursued this theory as his defense strategy in cross-examination of Plaintiff's witnesses at trial.

At the conclusion of the NYPD proceeding, Rae Downes Koshetz, the Deputy Commissioner of Trials who presided over the disciplinary hearings, found that Yokemick was "factually guilty" of the "wrongful" use of physical force by throwing the radio at Banks, but dismissed the charge that Yokemick "inappropriate[ly] use[d] [police] equipment in apprehending a suspect." (Memorandum for Police Commissioner Regarding Officer Craig Yokemick, dated February 28, 2001 ("Departmental Decision"), attached to Hoffman Decl. as Ex. C. at 1.)

In ruling on Yokemick's claim for representation, the Court denied the request for several reasons: (1) there was a sufficient factual basis for the City's denial of representation; (2) the departmental disciplinary hearing was still pending at the time of the City's denial of legal representation; and (3) a potential conflict of interest existed between Yokemick, the City and the other defendants. *Banks,* 144 F.Supp.2d at 278–279. The Court also found that Yokemick's motion for indemnification was premature, indicating that the proper procedure was to consider the claim as a matter of law after the jury returned a verdict, and after the City had sufficient time to review the evidence produced at trial and make a final determination. *See id.* ("[If] the jury returns a verdict of liability on any ... claims ... grounded fundamentally on findings that encompass

intentional misconduct or recklessness, the Court will give such findings, if substantiated by the trial evidence, controlling weight.").

On May 18, 2001, the trial concluded and the jury returned a verdict for Plaintiff on Banks's federal claims asserting unlawful arrest and use of excessive force, and on the state law claims of wrongful death and negligence in the procurement of adequate medical treatment. The jury awarded Plaintiff damages totaling $605,001.

In separate post-trial motion submissions, Yokemick and Plaintiff both argued that because the City had denied, in its answer to Plaintiff's amended complaint, that Yokemick engaged in intentional wrongdoing or recklessness, it is now estopped, by the doctrine of judicial admissions, from asserting the opposite position as a basis for denying indemnification. (*See* Memorandum of Law In Support of Defendant Police Officer Craig Yokemick's Cross Claim for Indemnification and in Opposition to the City of New York's Decision to Refuse to Indemnify Police Officer Yokemick, dated March 8, 2002, ("Yokemick's Brief") at 3; *and* Memorandum of Law in Opposition to the City of New York's Decision Not to Indemnify Defendant Officer Yokemick, dated March 8, 2002, (the "Pl's Brief") at 4.) Yokemick also argues that since the jury verdict did not contain a finding of intentional wrongdoing or recklessness, the City cannot deny indemnification on this ground. (Yokemick's Brief at 11.)

In denying indemnification to Yokemick, the City also asserted, citing GML § 50–k(4), that Yokemick had failed to cooperate with the Corporation Counsel in the City's defense of this action. Section 50–k(4) states:

> The duty to defend or indemnify ... shall be conditioned upon ... (b) the full cooperation of the employee in the de-

fense of such action or proceeding and in defense of any action or proceeding against the city based upon the same act or omission, and in the prosecution of any appeal.

GML § 50–k(4). The City asserts that Yokemick's failure to cooperate was evidenced by his: (1) refusal to meet with and provide pertinent information to the Corporation Counsel during the City's defense of this action; (2) invocation of the Fifth Amendment at his deposition; (3) not appearing at trial; and (4) not responding to requests for documents, interrogatories and admissions. (Memorandum of Law in Further Support of its Decision Not to Indemnify Police Officer Craig Yokemick, dated April 26, 2002 (the "City's Reply"), at 8.)

Yokemick argues that the City's allegations of his failure to cooperate are improper grounds for denying indemnification. He maintains that he did not have a duty to cooperate because the City did not represent him. In response, the City contends that: (1) there was a sufficient factual basis for denying Yokemick indemnification; (2) Yokemick's failure to cooperate with the Corporation Counsel in the defense of this action does constitute sufficient grounds for denying indemnification; and (3) Plaintiff is judicially estopped from arguing that the City cannot deny indemnification on the ground that Yokemick acted intentionally or recklessly.

## II.  DISCUSSION

### A.  APPLICATION OF GML § 50–k

In the amended complaint, Plaintiff alleged that "Yokemick's assault was carried out willfully, wantonly, maliciously and/or with such reckless disregard of the consequences as to reveal a conscious indifference to the clear risk of death or serious bodily injury." (Amended Complaint by

Maybell E. Banks, dated March 2, 2000 ("Am.Compl.") at ¶ 23.) The City's amended answer asserted that Yokemick did not engage in intentional or reckless wrongdoing. (Answer to Amended Complaint by City of New York, dated May 15, 2000 ("Ans. to Am. Compl.") ¶ 23.) Plaintiff and Yokemick both contend that the City, by making general denials, advanced the position that Yokemick did not: (1) act willfully, or with reckless disregard to the risk of serious injury or death to Banks; (2) throw his radio without reason or probable cause; or (3) act without legal authority in violation of Banks's constitutional rights. (Ans. to Am. Compl. ¶¶ 23, 24 and 28.) According to Yokemick and Plaintiff, these statements constitute the City's judicial admissions that Yokemick's actions were neither intentional nor reckless.

If the City's amended answer were held to contain judicial admissions, the City would be precluded from contradicting its previous assertion that Yokemick did not act "willfully" or with a "reckless disregard" for the life of Banks. *See Western World Ins. Co. v. Stack Oil Inc.*, 922 F.2d 118, 122 (2d Cir.1990) ("[A] formal judicial admission is conclusive against [party throughout an] action."); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir.1985) ("A party's assertion of fact in a pleading is a judicial admission by which it is normally bound throughout the course of the proceeding.").

■ Judicial admissions are "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir.1995). Such assertions are affirmative actions—factual affirmations or stipulations of some sort—that bind both the party making the admission and the court. *See Bank of America v. Farley*, No. 00 Civ. 9346, 2002 WL 5586, at *6

(S.D.N.Y. Jan. 2., 2002) (treating the initial answer, in which defendant admitted signing credit documents, as a "formal judicial admission") (citing *Kessenich v. Raynor*, 120 F.Supp.2d 242, 249 (E.D.N.Y.2000)); *Kessenich*, 120 F.Supp.2d at 249 (finding that defendant was bound by an admission of indebtedness to plaintiff contained in answer to amended complaint); *Western World*, 922 F.2d at 122 (finding a judicial admission where defendant conceded in the amended answer and counterclaim that the insurance policy at issue included an endorsement); *Mull v. Ford Motor Company*, 368 F.2d 713, 715 (2d Cir.1966) (finding that the plaintiff was bound by the statement of facts in the pretrial order to which his attorney stipulated).

■ Judicial admissions obviate the need for debate, discussion or discovery regarding particular factual issues because the parties make concessions or stipulations regarding those issues that remove them from dispute. *See Keller*, 58 F.3d at 1198 n. 8 ("The significance of a judicial admission is precisely that it has the effect of withdrawing a fact from contention."); *see also* 4 John H. Wigmore, *Wigmore on Evidence* § 1058, at 27 (Chadbourn rev. ed.1972). (Judicial admissions are "formal act[s], done in the course of judicial proceedings, which waive[ ] or dispense[ ] with the production of evidence, by conceding for the purposes of litigation that the proposition of fact alleged by the opposition is true.").

The overall purpose of pre-trial discovery rules is to promote efficiency and judicial economy. The doctrine of judicial admissions helps facilitate this goal. By affording a party the opportunity to concede or stipulate to issues of fact, judicial admissions serve a number of functions. They provide notice to all litigants of the issues remaining in dispute, identify those that can be eliminated from the case and

those that cannot be, narrow the scope of discovery to disputed matters and thus reduce trial time. *See* Fed R. Civ. P. 36 advisory committee's note at 1970 Amendment.

■ Applying these principles to the instant case, the Court concludes that the City's denials in its amended answer can not be considered judicial admissions.[2] Here, the City made no formal concessions or affirmations of fact conclusively binding upon it regarding the nature of Yokemick's conduct.

As may be gleaned from the authorities cited, three defining attributes of judicial admissions emerge from the doctrine, none of which is satisfied by facts of the matter here at issue. First, judicial admissions generally pertain to binding assertions of *fact*, matters that a party unequivocally declares to be true because that party is uniquely positioned to know so and concede. Ordinarily, such matters may be readily ascertainable from examination of available evidence, and thus the admission removes the issue in question from contention and waives or dispenses with the production of further evidence. *See Bank of America*, 2002 WL 5586 at *6; *Keller*, 58 F.3d at 1198 n. 8; 4 *Wigmore* § 1058, at 27. A routine denial in the pleadings of one party, with respect to a matter that integrally depends on another party's intent, motive or other state of mind, and that rests upon conclusory statements not subject to verification without an extensive

evidentiary inquiry, is qualitatively different from the objective facts that are typically recognized as conceded or stipulated judicial admissions.

Second, parties to a lawsuit generally make and are held to judicial admissions expressed as formal acts by means of affirmative concessions or stipulations in order to facilitate resolution of disputes and promote judicial economy. By contrast, when declarations in pleadings relate to a party's asserted condition of mind, such as malice or intent, they often present "undesirable" and/or "unworkable" difficulties at the pleading stage. *See, e.g.*, 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1301, at 674 (2d ed.1990) (discussing Rule 9(b) of the Federal Rules of Civil Procedure and noting the difficulty inherent in describing a state of mind for pleading purposes). General attributions of mental state, such as those at issue here, present conclusory assertions or projections reflecting self-serving tactical responses about issues that are actually placed in contention instead of removed as disputed issues for trial. They are rarely conceded "facts" asserted to reduce dispute and limit the scope of litigation.

Third, judicial admissions relate to factual assertions made by one party concerning matters peculiarly within its knowledge or control, that is, facts the declarant is best situated to know and attest to in managing its affairs, as opposed to facts uniquely known or controlled by an adver-

**2.** The City's claim that judicial estoppel should prevent Plaintiff from advancing this argument is without merit. If the doctrine of judicial estoppel is applicable here at all, it is so only on the grounds that Plaintiff now asserts the opposite of her earlier argument on which she prevailed at trial. The Court, however, need not reach the merits of the estoppel argument because Yokemick incorporated and adopted Plaintiff's judicial admissions argument into his memorandum of law.

(Yokemick's Brief at 3.) Accordingly, the doctrine of judicial estoppel is inapplicable here since no conflict exists between the current position of Yokemick and any position Yokemick took at trial. *See Bates v. Long Island Railroad*, 997 F.2d 1028, 1037 (2d Cir.1993) ("The doctrine of judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him at an earlier proceeding.")

sary party. Here, although the City settled with Plaintiff, it maintained only a limited presence throughout the rest of the trial, one akin to that of a third-party observer with respect to issues concerning the nature of Yokemick's conduct for purposes of the City's indemnification determination. Thus, the City had neither basis nor occasion to present evidence or examine any of the trial witnesses. Accordingly, no longer formally a party to the issues remaining to be tried, the City was not in a position to directly affect the conduct of the trial or pursue pre-trial proceedings or to freely engage in motion practice that might have substantiated or altered what it had stated in its answer. Also as a non-party to the action, when the City settled with Plaintiff and declined to represent Yokemick, its interests did not coincide with those of Yokemick. In fact, the relationship between Yokemick and the City became adversarial when Yokemick cross-claimed against the City requesting representation and indemnification.

In this posture of the case, the City's denial of Yokemick's intentional misconduct, asserted in the City's answer more than one year earlier at a time when a different relationship existed between it and Yokemick, would have been irrelevant and inadmissible in Yokemick's defense, and thus would have served no function in eliminating factual disputes for trial, as the doctrine of judicial admissions is designed to do. To the contrary, Yokemick's intent and state of mind were fundamental aspects of the disputed factual issues presented to the jury at the start of the trial. More significantly, the assertions regarding Yokemick's state of mind were not matters that, absent some unequivocal affirmative concession or stipulation by Yokemick himself, related to readily verifiable facts within the City's knowledge or control, or that the City was in a position to declare conclusively binding upon itself.

It would institute a perverse application of the judicial admissions doctrine to hold that, in an adversarial relationship, conclusory and self-serving statements made in routine pleadings by one party about circumstances uniquely known only to the other would later be considered established fact as between them for all litigation purposes, and thus used in a collateral proceeding against the declarant. This observation holds especially true where, as here, the assertions claimed to be judicial admissions ascribe to a party a particular state of mind and are made by the adverse party at a time when their litigation interests and strategies may have coincided. The parties have cited no authority and the Court's own review has found none that would support such a far-reaching application of the judicial admissions principle.

Holding the City's answer denying the complaint's allegations as to Yokemick's intent as a judicial admission would also be inconsistent with the overall framework of GML § 50–k and defeat the purposes of the statute. One of the primary goals of GML § 50–k is to ensure that the City's determination of whether an employee is entitled to indemnification is based on an accurate and complete factual understanding of the underlying action in which the employee is charged with wrongful conduct. In enacting the statute, the legislature intended to indemnify only municipal employees who act within the scope of their employment, as opposed to those who intentionally violate agency rules and regulations. *See* GML § 50–k(3) ("[T]he duty to indemnify … shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee."); *see generally* N.Y. State Legislative Annuals 1979 at 402 (indicating that the New York State Legislature provided indemnification to city employees so

that those employees can "aggressively and zealously" perform their duties "up to the high standard which the public expects.").

In its review of the Corporation Counsel's indemnification determination in the instant case, the Court must follow the procedures established by GML § 50–k. The Court is further guided by the decision of the New York Court of Appeals in *Williams v. City of New York,* 64 N.Y.2d 800, 486 N.Y.S.2d 918, 476 N.E.2d 317, 318 (1985). There, the court held that GML § 50–k subordinates the initial determination of the Corporation Counsel to: (i) the findings of the employee's agency during a departmental proceeding in which the "act or omission upon which the court proceeding is based" is also at issue, § 50–k(5), and (ii) the findings of a judge on review. *See also* GML § 50–k(5).

GML § 50–k establishes the procedures that the City must follow when deciding whether to provide representation and indemnification to its employees. Section 50–k(2), which describes the criteria for determining when an employee is entitled to legal representation by the City, provides that:

> At the request of the employee and upon compliance by the employee with the provisions of subdivision four of this section, the city shall provide for the defense of an employee of any agency in any civil action or proceeding in any state or federal court ... arising out of any alleged act or omission which the Corporation Counsel finds occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged act or omission occurred.

GML § 50–k(2) (2002). The City may deny representation if the Corporation

Counsel finds that an employee did not satisfy these prerequisites.

In prescribing the limits on the City's duty to indemnify employees, GML § 50–k(3) employs much of the same criteria found in § 50–k(2). Section 50–k(3) states:

> The city shall indemnify ... its employees in the amount of any judgment obtained against such employees in any state or federal court, or in the amount of any settlement of a claim approved by the Corporation Counsel and the comptroller, provided that the act or omission from which such judgment or settlement arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged damages were sustained; the duty to indemnify and save harmless prescribed by this section shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee.

GML § 50–k(3). Section 50–k(3), however, offers the City additional grounds for denying indemnification that are not stated in § 50–k(2)'s rules pertaining to representation. It indicates that "the duty to indemnify ... shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee." GML § 50–k(3). This language implies that, barring a settlement before trial, a final indemnification determination will await a judgment against the employee on the merits in the underlying action.

The language of § 50–k(3), unlike § 50–k(2), does not explicitly indicate who conducts the requisite inquiry. The initial determination made by the Corporation Counsel is subject to findings from any departmental disciplinary proceedings:

In the event that the act or omission upon which the court proceeding against the employee is based was or is also the basis of a disciplinary proceeding by the employee's agency against the employee, representation by the Corporation Counsel and indemnification by the city may be withheld (a) until such disciplinary proceeding has been resolved and (b) unless the resolution of the disciplinary proceeding exonerated the employee as to such act or omission.

GML Section 50–k(5). The statute also does not explicitly indicate who must make the finding of intentional wrongdoing, pursuant to § 50–k(3), or the decision to forestall indemnification or representation to await the outcome of the departmental proceeding, pursuant to § 50–k(5). The *Williams* court addressed this issue and held that the determination of whether an employee's actions were within the scope of employment for purposes of indemnification is a matter to be decided in the first instance by the Corporation Counsel. *See Williams*, 486 N.Y.S.2d 918, 476 N.E.2d at 318. In many cases, when indemnification and representation are withheld pursuant to § 50–k(5), the determination as to both entitlements will be grounded on the same findings by the Corporation Counsel. That determination, pursuant to *Williams*, is subject to judicial review and "may be set aside only if it lacks a factual basis and in that sense is arbitrary and capricious." *Id.*

Just as GML § 50–k articulates procedures to prevent the City's erroneous grants of representation and indemnification, safeguards also exist that protect municipal workers from erroneous denials of representation and/or indemnification. One of these safeguards is judicial review

of the Corporation Counsel's determination. Judicial review, discussed in further detail below, provides the employee with the opportunity to have a court consider the agency's determination in light of the fuller record to ensure that it does not lack a factual basis and is not arbitrary and capricious. *See Kelly v. City of New York,* 692 F.Supp. 303, 306 (S.D.N.Y.1988); *Harris v. Rivera,* 921 F.Supp. 1058, 1060–1061 (S.D.N.Y.1995); *Williams,* 486 N.Y.S.2d 918, 476 N.E.2d at 318. Another safeguard against an erroneous denial of the benefits of GML § 50–k is the possibility of an award of attorney's fees to defendants who are erroneously denied representation and who suffer financial harm as a result. *See Young v. Koch,* 128 Misc.2d 119, 487 N.Y.S.2d 918, 919 (N.Y.Sup.Ct. 1985). These procedural protections of GML § 50–k provide City officers and employees with adequate means to challenge the Corporation Counsel's final determination and a means for sufficient recovery if that challenge prevails.

In order to minimize potential error detrimental to either the City or the claimant employee, GML § 50–k(5) implicitly contemplates postponing the Corporation Counsel's indemnification determination so as to increase the probability that the City will make a proper decision based on the most accurate and complete factual understanding of the underlying action. By allowing the Corporation Counsel to wait until any departmental disciplinary proceeding has concluded before making its indemnification determination, GML § 50–k(5) allows the City to consider factual findings and other evidence that may surface during the course of the administrative procedures.[3] Such consideration is

**3.** This point is particularly true in the instant case. Yokemick never testified at trial. During his deposition Yokemick invoked the Fifth Amendment privilege against self-incrimination. (Deposition of Craig Yokemick, July 31, 2000, Hoffman Decl., Ex. E.) Accordingly, the

not only consistent with the procedural framework of GML § 50–k(5), it also promotes judicial economy and fairness. *See Nevares v. Morrissey*, No. 95 Civ. 1135, 1998 WL 265119, at *9 (S.D.N.Y. May 22, 1998). Furthermore, waiting for the departmental determination allows the Corporation Counsel and the City to consider the factual findings of other public agencies that may have considered the evidence, resolved disputed issues of fact and made necessary inferences regarding the record.

■ In the instant case, a grant of indemnification before the NYPD disciplinary proceeding ended would have been premature. The underlying incident here at issue occurred on October 29, 1998. The complaint was filed on October 26, 1999. The amended complaint was filed, almost one year later, on March 2, 2000. The City's amended answer was filed on March 15, 2000. The departmental recommendation by the Deputy Commissioner of Trials, however, was not released until February 28, 2001, almost one year after the City's amended answer. The recommendation by the Deputy Commissioner was subsequently approved by the Commissioner on March 3, 2001, approximately two months before trial.[4] During this period, the City properly withheld indemnification pursuant GML § 50–k(5).

Facts related to Yokemick's mental state, which the City was required to consider in its indemnification determination pursuant to § 50–k(5), were unavailable to the City at the pleadings stage. Whether an employee acted intentionally or recklessly is generally determined by an analysis of the evidence that is presented and tested through the adversarial process during trial—through an evaluation of direct testimony, cross examination of witnesses, statements of colleagues, supervisor reports, expert opinions and reasonable inferences drawn from circumstantial evidence. Neither the NYPD determination nor the full evidentiary record of the trial of this action, which was incomplete until the jury's verdict, were available to the Corporation Counsel before it filed the City's amended answer on May 15, 2000. Therefore, had the City decided to indemnify Yokemick based on the conclusory general denials in the City's amended answer, its determination would have been based on an incomplete factual record, and the risk of the City's decision being arbitrary and capricious would have been much greater.

The assertions by Yokemick and Plaintiff that the City is bound by the denials in its amended answer present a somewhat novel issue under New York law. *See Nevares*, 1998 WL 265119 at *9 ("[T]he contour of an employee's right to indemnification pursuant to [§ 50–k(3) ] does not appear to have been decided by any New York State Court.") Earlier cases touching on aspects of GML § 50–k, however, have defined some relevant principles that should guide the Court's review of an indemnification determination. Beyond the fundamental constraints of stare decisis

only statements from Yokemick that the City, Corporation Counsel and the Court can consider in making and reviewing the indemnification determination are those that he made during the course of the departmental proceeding.

4. The departmental proceeding fell short of satisfying § 50–k(5) because it did not exonerate Yokemick. *See Banks,* 144 F.Supp.2d at

280. Accordingly, the departmental determination, while illuminating factual and agency policy issues not considered by the jury, did not compel the City to indemnify Yokemick because it found him "factually guilty" of the improper use of a radio and did not address the fundamental nature of the claims presented at trial. *See id.*

and statutory interpretation, "considerations of judicial economy and fairness to the litigants" are of significant importance to a court in indemnification proceedings. *Harris,* 921 F.Supp. at 1061.

At most, the Court finds that the case at bar presents some tension between the goals of federal procedural rules—here those governing judicial admissions—to promote judicial economy by narrowing issues for trial, and the purposes of GML § 50–k to ensure that the City makes a proper indemnification determination based on the most adequate and accurate factual record. In this instance, the Court concludes that the ends of the state statute are more relevant. The trial of this matter is over. Binding the City to the routine general denials made in its amended answer concerning Yokemick's state of mind would serve no apparent purpose. Were the Court to hold otherwise, it would frustrate the goals of GML § 50–k by compelling the City, in future cases, to make premature indemnification determinations based upon an undeveloped factual record.

## B. THE CITY'S INDEMNIFICATION DETERMINATION

### 1. *Standard of Review*

■ Having concluded that the City is not barred by the doctrine of judicial admissions from asserting, as one of the grounds for denying Yokemick indemnification, that he acted intentionally or recklessly, the Court must consider whether the City's decision was arbitrary and capricious. When deciding the various pretrial motions of the parties, this Court indicated that it would treat the indemnification proceeding as one akin to an Article 78 pro-

ceeding, thereby following the precedent set in *Williams.*[5] *See Banks,* 144 F.Supp.2d at 287. The Court must consider the record available to the Corporation Counsel at the time of decision and determine whether the Corporation Counsel's determination is rational and substantiated by facts contained in that record. *See id.* (citing *Williams,* 486 N.Y.S.2d 918, 476 N.E.2d at 318 ("[Indemnification and representation decisions] may be set aside only if [they are] . . . arbitrary and capricious.")). Thus, the City's final determination is afforded deference so long as it does not "lack a factual basis." *Id.; see also Jocks v. Tavernier,* 97 F.Supp.2d 303, 313.

### 2. *Factual Basis*

Plaintiff prevailed on her federal claims asserting unlawful arrest and use of excessive force and on her state law claims of wrongful death and negligence in the procurement of medical care. The legal elements comprising these claims are not fundamentally grounded on intentional misconduct or recklessness. *See Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (stating that a police officer's subjective intention or ulterior motive will neither validate nor invalidate police conduct because officer conduct is measured by an objectively reasonable standard, pursuant to the Fourth Amendment and 28 U.S.C. § 1983); *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting [the Officer], without regard

---

5. Debate exists as to whether an Article 78 proceeding is the only vehicle for reviewing the City's indemnification determination. The Court notes that § 50–k(2) does not specify the means by which such review should be conducted and that there is no other binding authority indicating that an Article 78 proceeding is the exclusive means by which to review an indemnification determination made in accordance to GML § 50–k. *See Nevares,* 1998 WL 265119 at *1.

to their underlying intent or motivation.") (citing *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)); *see also Dunham v. Village of Canisteo*, 303 N.Y. 498, 104 N.E.2d 872, 875 (1952) (holding that a New York municipality owes a duty of care to individuals that agents of the municipality know or should know are hurt, injured or in need of a doctor).

Nonetheless, that the jury was not required to find intentional or reckless conduct as elements of the claims on which it determined liability is not material nor dispositive to the inquiry under GML § 50–K.[6] In addition to asserting that Yokemick failed to cooperate with the Corporation Counsel as required by GML § 50–k(4)(b), the City still claims that it denied indemnification to Yokemick because he engaged in intentional wrongdoing and recklessness.[7] (City's Reply at 4.) This determination is sufficiently supported by the factual record that emerged from the NYPD disciplinary proceeding and corroborated by evidence presented at the trial of the underlying action. While Yokemick did not testify at trial, the findings of the NYPD Deputy Commissioner of Trials, who presided over a proceeding where Yokemick did testify, are highly probative as to the level of care that Yokemick exercised in attempting to arrest Banks. The Deputy Commissioner of Trials concluded that: (i) Yokemick "made a tactical error

and was factually guilty"; (ii) throwing the radio "constitut[ed] physical force, period"; (iii) Yokemick intended to use physical force; (iv) the conduct engaged in was "wrongful"; and (v) common sense dictates that "police officers should not make a habit of lobbing radios, which cost over $1,000.00 each, on crowded sidewalks where innocent bystanders could be injured and the equipment lost." (Departmental Hearing Decision at 5–6.)

Yokemick presented no evidence at trial and this Court finds no evidence in the record that indicates that Yokemick or other officers were trained to use their police radios in this manner. In fact, the evidence supported the opposite conclusion. Sergeant Rodriguez, Curriculum Coordinator of the Police Academy's Physical Training Division and an expert in police tactics, testified at the departmental hearing that the portable radio is a "communication piece" and its use as a "projectile is ill-advised except as a last resort, *i.e.*, if an officer is defending against deadly physical force." *Id.* Yokemick admitted that he used the radio as a projectile to apprehend Banks, a fleeing suspect, not to protect his life or the lives of others from a threat of deadly physical force. (Yokemick Interview at 8.) The trial record also evinced that Yokemick hurled the radio with enough force and from a distance close enough to Banks to have increased the probability that a direct strike, espe-

---

**6.** Probably for tactical considerations anticipating the debate over Yokemick's state of mind in connection with the City's indemnification determination, Plaintiff withdrew, during the course of the trial, all claims she had asserted against Yokemick that entailed elements of intentional or reckless conduct. Accordingly, that issue never reached the jury squarely for factual determination.

**7.** The Court does not express an opinion on the issue of whether a defendant who was denied representation by the Corporation Counsel, still has a duty, pursuant to GML § 50–k(4)(b), to cooperate with the Corpora-

tion Counsel in the defense of the matter even in cases where a conflict of interest may exist between the parties. (City's Reply at 8–10.) The parties have not submitted, nor has the Court discovered, any binding precedent interpreting § 50–k(4)(b) to require City employees to cooperate, beyond the basic mandates of the adversarial system, with the Corporation Counsel after the Corporation Counsel has denied representation to that employee because of a potential conflict. *See generally Mercurio v. City of New York*, 758 F.2d 862, 864 (2d Cir.1985).

cially given Banks's motion on a bicycle, would cause severe injury or death.

Moreover, the evidence at trial established that after Banks toppled from the bicycle and lay semi-conscious on the ground, apparently having suffered injury caused either by the blow from Yokemick's radio or by the fall to the pavement or both, Yokemick: (1) took no action to assist Banks, or render aid or summons an ambulance; (2) did not inform any of the officers who transported Banks to the police station or those at the precinct, or the ambulance attendants who later moved him to the hospital, that Banks had been struck on the head by Yokemick's radio; (3) arrested Banks and, rather than sending him to the nearby hospital, had him taken to the precinct jail, where, contrary to customary practice, he was escorted in through the back entrance and immediately locked in a cell; and (4) referred to Banks at the precinct as the prisoner who was "claiming" injury. Considered as a whole, these circumstances all sufficiently support a reasonable finding that Yokemick's actions crossed the threshold into conduct that would qualify as intentional or reckless.

In light of these facts, the Court finds that the City's decision to deny indemnification to Yokemick was neither arbitrary nor capricious because it was sufficiently supported by the facts in the record at the time the City's final indemnification determination was made.

Finally, Yokemick contends that he is entitled to indemnification because, as provided for in GML § 50–k(5), he was exonerated by the NYPD at the conclusion of the departmental disciplinary proceedings. The Court considered and rejected this argument in connection with its ruling on Yokemick's request for legal representation by the City. *See Banks*, 144 F.Supp.2d at 280. The standard that applies to an assessment of the Corporation Counsel's indemnification determination pursuant to GML § 50–k(3) is the same that governs a review of a denial of representation under § 50–k(2). *See Williams*, 486 N.Y.S.2d 918, 476 N.E.2d at 318. For the reasons set forth in its earlier decision the Court finds that the NYPD's decision with regard to Yokemick's disciplinary proceeding does not constitute a sufficient exoneration for the purposes of GML § 50–k(3). *See Banks*, 144 F.Supp.2d at 280.

### III. CONCLUSION AND ORDER

For the foregoing, it is hereby

**ORDERED** that defendant Yokemick's cross-claim for indemnification is DENIED.

**SO ORDERED.**